## WEAST v. DUFFIE.

1. MALPRACTICE—LIMITATION OF ACTIONS.
    In this State actions for malpractice of physicians and surgeons must be brought within two years from the time the cause of action accrues (3 Comp. Laws 1929, § 13976, subd. 3).

2. LIMITATION OF ACTIONS—FRAUDULENT CONCEALMENT.
    Running of statute of limitations is tolled for concealment of cause of action if defendant fraudulently concealed from plaintiffs that they had a cause of action against him (3 Comp. Laws 1929, §§ 13976, 13983).

3. SAME—KNOWLEDGE OF CAUSE OF ACTION—DETAILS OF EVIDENCE.
    Party who has knowledge, or, by exercise of reasonable diligence might have known, that a cause of action exists in his favor, has only himself to blame if he fails to take means provided by law for prosecuting or preserving his claim notwithstanding he may not know the details of the evidence by which to establish his cause of action.

4. COMPROMISE AND SETTLEMENT—SETTLEMENTS FAVORED IN LAW.
    Settlements are favored in law.

5. SAME—CAUSE OF ACTION ASSUMED OR CLAIMED.

Settlements assume that party receiving compensation has a cause of action or, at least, that he claims to have one.

6. RELEASES—COVENANT NOT TO SUE.

A covenant not to sue is not an agreement for a gratuity, as one party pays agreed damages or buys his peace against a cause of action asserted by the other, positively or tentatively.

7. LIMITATION OF ACTIONS — FRAUDULENT CONCEALMENT — COMPROMISE AND SETTLEMENT.

Running of statute of limitations will not be tolled as to cause of action as having been fraudulently concealed from person who received a substantial sum in settlement especially when settlement was reached after long negotiations, consultations with counsel and threats of suit, except in case of breach of fiduciary duty or unconscionable overreaching (3 Comp. Laws 1929, §§ 13976, 13983).

8. COMPROMISE AND SETTLEMENT—DENIAL OF LIABILITY—FRAUD.

Recital or denial of liability by one against whom cause of action is claimed to lie, made in the course of settlement or covenant not to sue, is, ordinarily, not a fraudulent statement of fact but usually no more than an opinion or assertion of the legal position the party is assuming.

9. PHYSICIANS AND SURGEONS — POST-OPERATIVE TREATMENT — TERMINATION OF RELATION OF PHYSICIAN AND PATIENT—NOTICE.

Physician, called to treat woman and upon whom he operated for ruptured Fallopian tube, could not relieve himself of legal responsibility for post-operative treatment without acquiescence of, or notice to, patient and her husband.

10. LIMITATION OF ACTIONS—FRAUDULENT CONCEALMENT.

It is not a fraudulent concealment of a cause of action against one tortfeasor for him to claim that others are also liable for the tort (3 Comp. Laws 1929, §§ 13976, 13983).

Appeal from Antrim; Gilbert (Parm C.), J. Submitted June 13, 1935. (Docket No. 73, Calendar No. 38,439.) Decided September 9, 1935.

Bill by Charles E. Weast and Myrtle Weast against Don H. Duffie to set aside a covenant not to

sue on the grounds of fraud and to suspend the statute of limitations. Decree for plaintiffs. Defendant appeals. Reversed.

*Dunham & Sherk,* for plaintiffs.

*Douglas, Barbour, Desenberg & Purdy,* for defendants.

FEAD, J. Plaintiffs had decree setting aside, for fraud, a covenant not to sue defendant, declaring the covenant not a bar to suitable. proceedings against defendant for negligent malpractice and suspending the statute of limitations to permit suit against him.

September 2, 1931, Mrs. Weast was taken suddenly ill at Central Lake and defendant was called to attend her. He removed her to a hospital at Charlevoix and operated for a ruptured Fallopian tube. Defendant employed Dr. F. F. McMillan to administer the anæsthetic. Mrs. Weast lost considerable blood and, to retain the blood in her body, both physicians advised tight bandages on her legs. The nurses applied the bandages. The treatment is recognized as proper but such bandages must not be permitted to remain over six hours. Dr. Duffie, shortly after the operation, went to Grand Rapids, without leaving order for removal of the bandages. He was gone four days. Dr. McMillan left town and was gone until the next day after the operation.

The record is not specific as to time when or person by whom the bandages were removed, but it was not done in proper season and the patient developed ulcerated areas on her legs, with substantially complete paralysis from the knees down. After his return, Dr. McMillan attended the patient a few times,

apparently upon call of a nurse. Dr. Duffie later took charge of Mrs. Weast, treated her for a time, and finally sent her to a hospital in Detroit, where she remained several months, suffering greatly, and at times mentally disturbed. She is permanently and deplorably crippled.

For nearly a year, plaintiffs and defendant had extensive correspondence looking to settlement for the injuries due to the obviously negligent treatment. Defendant's insurer was involved in the negotiations. Plaintiffs also had some correspondence with Dr. McMillan. Defendant first offered $500. The negotiations between plaintiffs and defendant, at times, contemplated complete settlement for the negligence and as to all of the parties. At others, it involved settlement between plaintiffs and this defendant. Each asked the other to submit an offer. At times, it appeared that settlement would fail and suit against defendant was mentioned. Plaintiffs had consulted an attorney. Finally, plaintiffs and defendant reached an agreement for settlement, which was consummated without knowledge of plaintiffs' attorney and against his advice, plaintiffs employing another attorney to pass upon the form of agreement. Dr. Duffie, upon advice of counsel, had suggested an agreement not to sue, as releasing him without discharging other tortfeasors. On August 25, 1932, in consideration of $3,500 paid them by defendant (or his insurer) plaintiffs executed an agreement not to sue defendant on account of any present or future claims arising out of the operation. The agreement recited that defendant denied liability but, to prevent suit against him and on account of sympathy for Mrs. Weast, he was willing to compromise the claim.

Throughout the correspondence, plaintiffs sought to ascertain from Dr. Duffie which physician had the

duty of care of Mrs. Weast after the operation and while Dr. Duffie was at Grand Rapids. Defendant did not directly answer the question but he intimated that, by reason of local custom, Dr. McMillan should have taken care of her. Dr. Duffie did not admit nor deny his own liability, suggesting that an impartial tribunal would need to determine it. In one letter, plaintiff Weast stated to defendant that the attorney for the insurance company had told him there was nothing left to do but to sue and Dr. Duffie "will get hooked good and plenty in case of a suit." In the course of the correspondence, mention was made of suit by plaintiffs against both doctors, although Weast deemed Dr. McMillan the more to blame.

Plaintiffs' claim of fraud is that, about two weeks prior to the settlement and as an inducement to it relied on by them, Dr. Duffie represented that he had expected Dr. McMillan to care for Mrs. Weast after the operation; that he had made specific arrangements to that effect; that such was the local custom and Dr. McMillan had never failed before; and, upon plaintiffs asking him if he would so testify in case they covenanted not to sue him, he replied that he would. Thereafter plaintiffs brought suit against Dr. McMillan, trial was had in June, 1934, and resulted in a disagreement of the jury. A second trial, in November, 1934, resulted in a verdict of not guilty. At the first trial of the McMillan case Dr. Duffie denied specific agreement or custom charging Dr. McMillan with the post-operative care of Mrs. Weast. This suit was commenced June 18, 1934.

Counsel raise several interesting questions but we think that only the matter of the statute of limitations needs consideration because, if suit by plaintiffs against defendant for negligent malpractice is

barred thereby, the other relief prayed is of no avail.

Section 13976, subd. 3, 3 Comp. Laws 1929, requires actions for malpractice of physicians and surgeons to be brought within two years from the time the cause of action accrues. Section 13983, 3 Comp. Laws 1929, provides:

.''If any person who is liable to any of the actions mentioned in this chapter, shall fraudulently conceal the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within two years after the person who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of . this chapter.''

The language of the statute makes it apparent that the running of the statute was tolled only if defendant fraudulently concealed from plaintiffs the knowledge that they had a cause of action against him. The rule is stated in 37 C. J. p. 976:

''The fraudulent concealment which will postpone the operation of the statute must be the concealment of the fact that plaintiff has a cause of action. If there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of the statute, and in this behalf a party will be held to know what he ought to know, pursuant to the rule hereinbefore stated (i e., by the exercise of ordinary diligence).

''It is not necessary that a party should know the . details of the evidence by which to establish his cause of action. It is enough that he knows that a cause of action exists in his favor, and when he has this knowledge, it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim.''

So, even if the covenant be set aside for fraud, the statute of limitations is operative if plaintiffs knew they had a cause of action against defendant.

Settlements are favored in the law. They assume that the party receiving compensation has a cause of action (*Tews* v. *C. F. Hanks Coal Co.,* 267 Mich. 466), or at least that he claims to have a cause of action. A covenant not to sue is not an agreement for a gratuity. The one party pays agreed damages or buys his peace against a cause of action asserted by the other, positively or tentatively. Except in case of a breach of fiduciary duty or of unconscionable overreaching, it would be incongruous to read 3 Comp. Laws 1929, § 13983, as permitting a person to toll the statute of limitations upon the claim that the same cause of action for which he had accepted a substantial sum in settlement had been fraudulently concealed from him, especially when, as at bar, the settlement had been reached after long negotiations, consultations with counsel and threats of suit.

Except in the recital in the covenant not to sue, Dr. Duffie did not represent to plaintiffs that he was not legally liable for the injuries. Such recital, or a denial of liability made in the course of settlement, ordinarily is not a fraudulent statement of fact. Usually it is no more than an opinion or an assertion of the legal position the party is assuming. *Ætna Ins. Co.* v. *Reed,* 33 Ohio St. 283; *Gilmore* v. *Ozark Mutual Ass'n* (Mo. App.), 21 S. W. (2d) 633.

Plaintiffs employed Dr. Duffie to care for Mrs. Weast. He could not relieve himself of legal responsibility for the treatment without acquiescence of, or notice to, plaintiffs. Plaintiffs had no notice of nor did they consent to Dr. Duffie intrusting the post-operative treatment to Dr. McMillan. If the

representations made by Dr. Duffie to obtain the settlement were true, he and Dr. McMillan were joint tortfeasors. If they were untrue, the cause of action was against Dr. Duffie alone. Consequently, the representations could not operate to conceal from plaintiffs a right of action against Dr. Duffie. At most, if believed, they merely indicated that Dr. McMillan was morally the more to blame.

Obviously, it is not a fraudulent concealment of a cause of action against himself by one tortfeasor to claim that others are also liable for the tort.

Reversed, and bill dismissed.

POTTER, C. J., and NELSON SHARPE, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.