INDUSTRIAL STEEL STAMPING, INC v ERIE STATE BANK

Docket No. 91133. Submitted December 9, 1986, at Detroit. Decided April 5, 1988.

Plaintiff, Industrial Steel Stamping, Inc., brought an action in the Monroe Circuit Court against defendant, Erie State Bank, alleging negligence, breach of contract, and breach of statutory warranties in allowing plaintiff's controller, Debra Carattoni, to withdraw certain corporate funds for her personal use. Defendant filed a third-party complaint against Carattoni alleging fraud and seeking indemnity or contribution. Defendant moved for summary disposition alleging that plaintiff's claims were barred by an agreement executed by Carattoni and George Berbynuk, the sole owner of plaintiff, because it constituted an accord and satisfaction as to all of the funds withdrawn by Carattoni. The agreement was executed at a time when Berbynuk and plaintiff's officers and directors were in the midst of litigation over who had the right to control and own the plaintiff corporation. The trial court, William J. Weipert, Jr., J., granted defendant's motion. Plaintiff appealed.

The Court of Appeals *held:*

1. The trial court correctly treated Berbynuk as having the authority and intent to bind plaintiff to the agreement with Carattoni. The agreement contained a covenant not to sue Carattoni. The agreement also contained an accord and a satisfaction, or at least some legal excuse for not performing and carrying out the accord. The agreement was not too vague to enforce.

2. The trial court's determination that the accord and satisfaction contained in the agreement was enforceable upon being

REFERENCES

Am Jur 2d, Accord and Satisfaction §§ 1, 50, 51; Contribution §§ 51, 57, 107; Corporations § 592; Covenants, Conditions, and Restrictions § 8; Release §§ 2, 37.

What law governs right to contribution or indemnity between tortfeasors. 95 ALR2d 1096.

Release of one joint tortfeasor as discharging liability of others: Modern trends. 73 ALR2d 403.

See also the annotations in the Index to Annotations under Corporate Stock and Stockholders; Covenants.

executed is contrary to the parties' meeting of the minds as expressed in the agreement. The agreement contained covenants which were dependent in nature. Because the factual issue whether Carattoni performed as obligated by the agreement was not resolved by the trial court, the trial court's grant of summary disposition in favor of defendant is reversed and remanded.

3. The contribution release statute, MCL 600.2925d(b); MSA 27A.2925(4)(b), applies only to tortfeasors sharing a common burden of liability in tort. On remand, the setoff provisions of the statute should only be applied to plaintiff's negligence claim.

Reversed and remanded.

1. Corporations — Contracts — Shareholders.

A contract made by a sole shareholder or controlling shareholder of a corporation generally is not binding on the corporation; however, a complete identity of interest between the sole shareholder and the corporation may lead a court to treat them as one for certain purposes; one justification for looking beyond a corporate entity is to accomplish a just result; each case should be decided on its own underlying facts.

2. Release — Torts — Contracts.

A release of one tortfeasor does not release the other tortfeasors unless the terms of the release so provide (MCL 600.2925d[a]; MSA 27A.2925[4][a]).

3. Release — Covenants — Torts — Contracts.

A party's claim against other tortfeasors is reduced by the amount stipulated to in a release or covenant not to sue executed between the party and a joint tortfeasor (MCL 600.2925d[b]; MSA 27A.2925[4][b]).

4. Covenants — Covenant not to Sue.

A covenant not to sue is an agreement where one party pays agreed damages or buys his peace of mind against a cause of action asserted by the other party, positively or tentatively; it is distinguished from a release in that the covenant not to sue does not extinguish the cause of action.

5. Accord and Satisfaction — Torts.

An accord and satisfaction is more than a release of a claim, it requires that the claim be disputed and the substituted performance be agreed upon and accomplished; an essential element

is a meeting of the minds; a claim founded on a tort may be the subject of an accord and satisfaction and may be discharged thereby.

6. ACCORD AND SATISFACTION — CONTRACTS.

There are two types of accord and satisfaction agreements: (1) Where the agreement of the creditor is to accept the performance of the debtor's new promise or agreement in satisfaction of the demand; (2) Where such promise or agreement itself, based upon sufficient consideration, is accepted in satisfaction of the demand; in the first type, the accord must be fully executed to bar an action on the original demand; in the second type, the original demand is extinguished and cannot be the foundation of an action.

7. CONTRACTS — COVENANTS.

Agreements are dependent where performance by one party is conditioned on, and subject to, performance by the other; covenants or stipulations are independent when the consideration of the stipulation on one side is a mutual promise on the other, and an actual performance or tender is not required, the remedy on both sides being by action; guidelines for determining whether covenants are dependent or independent are: (1) the intention of the parties, as evidenced by the contract language, subject matter and object to be obtained; (2) the inherent justice of the situation; (3) the relative materiality of the breached covenant; (4) order of time of performance of the respective covenants; and (5) whether the breached covenant was only part of the consideration to be given and was compensable in damages and was incidental to the main purpose of the contract.

8. TORTS — CONTRIBUTION — RELEASE — JOINT TORTFEASORS.

The contribution-release statute applies only to tortfeasors sharing a common burden of liability in tort (MCL 600.2925d[b]; MSA 27A.2925[4][b]).

*David N. Walsh,* for plaintiff.

*Hammond, Ziegelman, Roach & Sotiroff, P.C.* (by *Lawrence R. Abramczyk* and *Amy L. Glenn*), and *Ready, Sullivan & Ready* (by *Michael L. Heller*), for defendant.

Before: Wahls, P.J., and R. M. Maher and D. J. Shipman,* JJ.

Per Curiam. Plaintiff, Industrial Steel Stamping, Inc. (iss), appeals as of right from the trial court's grant of summary disposition under MCR 2.116(C)(7) in favor of defendant, Erie State Bank. We reverse.

The parties' dispute stemmed from iss's discovery that its controller, Debra Carattoni, diverted corporate funds on deposit with defendant to her personal use. Iss's amended complaint, filed in March, 1981, sought in excess of $300,000 from defendant for its alleged negligence, breach of contract, and breach of statutory warranties in allowing Carattoni to withdraw the corporate funds. Defendant filed a third-party complaint against Carattoni alleging fraud and seeking indemnity or contribution.

In 1985, defendant moved for summary disposition under MCR 2.116(C)(7), alleging that iss's claims were barred by an agreement executed by Carattoni and George Berbynuk on August 2, 1980, because it constituted an accord and satisfaction as to all funds withdrawn by Carattoni. The agreement was executed at a time when Berbynuk was suing iss's officers and directors for ownership and control of iss. The agreement provided that Berbynuk, as the sole owner of iss, agreed not to institute any criminal, civil or other actions against Carattoni, and that "any and all corporate funds that have been diverted by Carattoni for non-corporate uses will be treated as a non-interest bearing loan to be repaid over a period of ten years." By comparison, Carattoni agreed to the following:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1. That she will actively and aggressively partic-
ipate in the litigation by Berbynuk, et al against
Industrial Steel Stamping, Klh Industries, Howard
Harmon, et al, including but not limited to affida-
vits of facts and court appearances, as well as
production of documents in her possession.

2. That she will assist in the structuring of
corporate books and records, cooperating with
whomever Berbynuk elects to act as his represen-
tative or Certified Public Accountant.

It is undisputed that Berbynuk eventually ob-
tained full control of ISS.

In an opinion dated February 19, 1986, the trial
court granted defendant's motion based on its
determination that, upon being executed, the
agreement constituted a valid accord and satisfac-
tion. Applying the contribution-release statute for
joint tortfeasors, MCL 600.2925d(b); MSA
27A.2925(4)(b), to the agreement, the trial court
concluded that ISS's negligence claim against de-
fendant had been reduced to zero.

On appeal, ISS challenges the trial court's grant
of summary disposition under MCR 2.116(C)(7) in
favor of defendant on various grounds. MCR
2.116(C)(7) provides for the dismissal of a claim
where barred because of "release, payment, . . . or
other disposition of the claim before commence-
ment of the action." The affidavits, together with
the pleadings and proofs then filed or submitted by
the parties, must be considered. MCR 2.116(G)(5).
Summary disposition is appropriate if the plead-
ings show that a party is entitled to a judgment as
a matter of law, or if the affidavits or other proofs
show that there is no genuine issue of material
fact. MCR 2.116(I)(1).

First, ISS argues that the agreement was not
binding on it. The trial court found that Berbynuk,
as the owner of ISS, had authority to bind ISS and

that the text of the agreement reflected such an intention.

In this state, the law treats a corporation as entirely separate from its shareholders, even where one person owns all the corporate stock. *Kline v Kline,* 104 Mich App 700, 702; 305 NW2d 297 (1981). The general view taken is that a contract made by a sole shareholder or controlling shareholder is not ordinarily binding on the corporation. 18A Am Jur 2d, Corporations, § 746, pp 615-616. However, the complete identity of interest between the sole shareholder and the corporation may lead the court to treat them as one for certain purposes. Each case should be decided on its own underlying facts. *Williams v American Title Ins Co,* 83 Mich App 686; 269 NW2d 481 (1978). One justification for looking beyond a corporate entity is to accomplish a just result. *Om-El Export Co, Inc v Newcor, Inc,* 154 Mich App 471, 480; 398 NW2d 440 (1986), lv den 426 Mich 878 (1986).

Here, Berbynuk and Carattoni executed the agreement at a time when Berbynuk and ISS's officers and directors were in the midst of litigation over who had a right to control and own ISS. A primary purpose of the agreement, as manifested from its unambiguous language, was that Carattoni assist Berbynuk in his lawsuit. The agreement plainly states Berbynuk's intent, as sole shareholder, to bind ISS to the agreement in order to accomplish that purpose. It is well settled that a contract which is unambiguous must be enforced as written. *Zinchook v Turkewycz,* 128 Mich App 513, 521; 340 NW2d 844 (1983), and *Shaffner v Riverview,* 154 Mich App 514, 520; 397 NW2d 835 (1986). For these reasons, and because no genuine issue of fact has been shown, we conclude that the trial court correctly treated Berbynuk as having

the authority and intent to bind ISS to the agreement. The peculiar facts of this case justify looking beyond the corporate entity and treating Berbynuk and ISS as one for purposes of the agreement.

The principal claim made by ISS is that the trial court incorrectly characterized the agreement as containing an accord and satisfaction which became enforceable upon being executed. Iss argues that the agreement was too vague to enforce and, at best, contained a covenant not to sue which did not bar its claim. Although we disagree with ISS's precise argument, we find that the trial court misconstrued the agreement.

A covenant not to sue is an agreement where one party pays agreed damages or buys his peace of mind against a cause of action asserted by the other, positively or tentatively. *Weast v Duffie,* 272 Mich 534, 540; 262 NW 401 (1935). It is distinguishable from a release in that the covenant not to sue does not extinguish the cause of action. As between the parties to the agreement, the result is the same. The difference is its effect on third parties. 66 Am Jur 2d, Release, § 2, p 679. At common law, the determination of whether a contract contained a mere covenant not to sue or a release was significant because the covenant did not release a party's claims against other joint wrongdoers while the release did. See *Boucher v Thomsen,* 328 Mich 312; 43 NW2d 866 (1950), and *Lincoln v Gupta,* 142 Mich App 615, 621; 370 NW2d 312 (1985), lv den 424 Mich 874 (1986). Under present Michigan law, the distinction is not significant. A release of one tortfeasor no longer releases the others unless the terms of the release so provide. MCL 600.2925d(a); MSA 27A.2925(4)(a). Under either characterization, a party's claim against other tortfeasors is reduced by the amount

stipulated to in the release or covenant. MCL 600.2925d(b); MSA 27A.2925(4)(b).

An accord and satisfaction is more than a release of a claim. An accord and satisfaction requires that the claim be disputed and the substituted performance be agreed upon and accomplished. *Gitre v Kessler Products Co, Inc,* 387 Mich 619, 624; 198 NW2d 405 (1972). An essential requirement is a "meeting of the minds." *Grettenberger Pharmacy, Inc v Blue Cross-Blue Shield of Michigan,* 98 Mich App 1, 13; 296 NW2d 589 (1980), lv den 410 Mich 910 (1981). A claim founded on a tort may be the subject of an accord and satisfaction and may be discharged thereby. *Belrose v Kanitz,* 284 Mich 497, 502; 280 NW 33 (1938).

Applying these principles to this case, it is clear that the agreement contained a covenant not to sue. Berbynuk, as owner of ISS, agreed not to institute any criminal, civil or other actions against Carattoni. This covenant not to sue, however, was only one part of the agreement. The agreement also contained an accord, meaning a meeting of the minds upon the proposition that something new would be substituted for existing claims, and a satisfaction or at least some legal excuse for not performing and carrying out the accord. See *Stadler v Ciprian,* 265 Mich 252, 262; 251 NW 404 (1933). The accord is manifested by the parties' clear intent to extinguish Carattoni's obligation to make immediate restitution and to substitute a new obligation in the form of a ten-year loan. All that remains is to ascertain the amount of diverted funds from business and bank records. Since the amount was capable of ascertainment, we reject ISS's argument that the agreement was too vague to enforce. See *Linnen v Ken*

*Brown Leasing Corp,* 5 Mich App 394, 397; 146 NW2d 719 (1966).

Our above conclusions do not, however, end the inquiry for there are two recognized types of accord and satisfaction agreements:

> "1. Where the agreement of the creditor is to accept the performance of the debtor's new promise or agreement in satisfaction of the demand.
>
> "2. Where such promise or agreement itself, based upon sufficient consideration, is accepted in satisfaction of the demand. 2 Chitty on Contracts (11th Am Ed), p 1124.
>
> "And in this class of cases it must clearly appear that the intention of the party was to accept such promise, and not the performance, in satisfaction of the original demand. In the first class of cases the accord must be fully executed to bar an action on the original demand. 1 Cyc p 312, and cases cited. In the second class the original demand is extinguished, and cannot be the foundation of an action." [*Fricke v Forbes,* 294 Mich 375, 381; 293 NW 686 (1940), quoting *Henderson v McRae,* 148 Mich 324, 327-328; 111 NW 1057 (1907).]

Here, the trial court's characterization of the agreement as creating enforceable promises upon being executed comes within the second class of agreements, qualified only by the trial court's determination that MCL 566.1; MSA 26.978(1) obviates the need for consideration. While the trial court's interpretation of this statute may be correct, we find that the trial court's determination that the accord and satisfaction contained in the agreement was enforceable upon being executed is contrary to the parties' "meeting of the minds" as expressed in the agreement.

The accord and satisfaction contained in the agreement is found in Berbynuk's promise, as owner of ISS, to convert Carattoni's immediate

obligation to make restitution to a ten-year loan. However, other covenants in the agreement pertaining to Berbynuk's litigation for ownership and control of ISS make it clear that Berbynuk's promise was dependent on Carattoni's performing her obligation to assist him. The significance of characterizing the covenant as "dependent" was explained in 17A CJS, Contracts, § 344, p 330, as follows:

> Agreements are dependent where performance by one party is conditioned on, and subject to, performance by the other. Covenants or stipulations are independent when the consideration of the stipulation on one side is a mutual promise on the other, and an actual performance or tender is not required, the remedy on both sides being by action.

Pertinent guidelines for determining whether covenants within a contract are dependent or independent are as follows:

> (1) The intention of the parties, as evidenced by the contract language, subject matter and object to be attained; (2) the inherent justice of the situation; (3) the relative materiality of the breached covenant; (4) order of time of performance of the respective covenants; (5) whether the breached covenant was only part of the consideration to be given and was compensable in damages and was incidental to the main purpose of the contract. [*Bobenal Investment, Inc v Giant Super Markets, Inc,* 79 Mich App 31, 42; 260 NW2d 915 (1977), lv den 402 Mich 870 (1978).]

Our application of these guidelines to the agreement persuades us that the covenants were dependent in nature. Because the factual issue whether Carattoni performed as obligated by the agree-

ment was not resolved below, we reverse the trial court's grant of summary disposition in favor of defendant.

As one final point, we note that the trial court limited its application of the contribution-release statute, MCL 600.2925d(b); MSA 27A.2925(4)(b), to iss's separate "negligence" claim against defendant. The trial court did not expressly address iss's contractual and statutory claims, although the order appealed from decrees a judgment of no cause of action against iss. The contribution-release statute applies only to tortfeasors sharing a common burden of liability in tort. See *O'Dowd v General Motors Corp,* 419 Mich 597; 358 NW2d 553 (1984). Accordingly, on remand, the setoff provisions of the statute should only be applied to iss's negligence claim. We express no opinion on whether iss has sufficiently set forth claims that do not sound in tort.

Reversed and remanded. Jurisdiction is not retained.