BILL KETTLEWELL EXCAVATING, INC v ST CLAIR COUNTY
HEALTH DEPARTMENT

Docket Nos. 113350, 118031. Submitted October 10, 1990, at Detroit.
Decided March 5, 1991, at 9:20 A.M.

Bill Kettlewell Excavating, Inc., doing business as Fort Gratiot
Sanitary Landfill, was granted an operating license in 1987. In
1988, the sole stockholder, who had been named the "responsi-
ble person to contact" on the license, sold all the stock in
Kettlewell to Stanwix Corporation. The St. Clair County Health
Department then notified Stanwix that a new license naming
another responsible person to contact was required for the
continued operation of the Fort Gratiot Sanitary Landfill. Jon
Parsons, director of the St. Clair County Health Department,
also issued a cease and desist order. Kettlewell Excavating
commenced an action in the St. Clair Circuit Court against the
county health department, seeking to enjoin enforcement of the
cease and desist order, and a preliminary injunction was
granted. The county health department, its director, and inter-
vening-defendant the Michigan Department of Natural Re-
sources counterclaimed, seeking to require Kettlewell Excavat-
ing to obtain a new operating license for the landfill because of
the sale of the stock and to prevent Fort Gratiot from import-
ing and disposing of out-of-state waste. The trial court, Ernest
F. Oppliger, J., granted a preliminary injunction to prevent
further importation and disposal of out-of-state waste by Fort
Gratiot, and ruled that the sale of Kettlewell Excavating's
stock required the corporation either to obtain a new operating
license or to obtain the DNR's approval of a transfer of the
existing license. Following amendment of the Solid Waste
Management Act to require explicit authorization for the im-
portation and disposal of out-of-state waste, and Kettlewell
Excavating's discontinuance of its importation and disposal of
out-of-state waste pending resolution of its challenge to the
constitutionality of the amendment in federal court, the trial

REFERENCES

Am Jur 2d, Licenses and Permits § 136; Municipal Corporations,
Counties, and Other Political Subdivisions §§ 457, 462.
See the Index to Annotations under Conservation; Corporations;
Landfills; Licenses and Permits.

court dismissed the counterclaims. Kettlewell Excavating appealed by leave granted the order requiring it either to apply for a new operating license or to obtain approval from the DNR to transfer its existing license. The county health department and its director appealed as of right from the dismissal of their counterclaims. The appeals were consolidated.

The Court of Appeals *held:*

A corporation which operates a solid waste disposal area pursuant to the Solid Waste Management Act, MCL 299.401 *et seq.*; MSA 13.29 *et seq.*, is not required to obtain a new operating license when the sole shareholder of the corporation sells the corporation stock, even where the shareholder is the only "responsible person to contact" named on the operating license. The corporation continues in existence, and the solid waste disposal area continues to be licensed.

1. The court erred in ruling, as a matter of law, that the sale of Kettlewell Excavating's stock required it either to apply for a new license or to seek approval from the DNR for the transfer of its existing license. Bill Kettlewell Excavating, Inc., at all times retained its distinct legal existence apart from its prior and current shareholders. Fort Gratiot, therefore, continued to be a licensed disposal area irrespective of the sale of Kettlewell Excavating's stock to Stanwix Corporation.

2. The ruling of the federal court during the pendency of this appeal that the amendments of the Solid Waste Management Act did not violate the Commerce Clause is binding with respect to the defendants' state court counterclaim. Therefore, res judicata bars further litigation of this issue, requiring the order dismissing the defendants' counterclaim to be affirmed.

Reversed in Docket No. 113350, and affirmed in Docket No. 118031.

1. ENVIRONMENT — SOLID WASTE DISPOSAL — SOLID WASTE MANAGEMENT ACT — WORDS AND PHRASES — "PERSON".

    The Solid Waste Management Act defines the term "person" to include a corporation (MCL 299.405[8]; MSA 13.29[5][8]).

2. ENVIRONMENT — SOLID WASTE DISPOSAL — SOLID WASTE MANAGEMENT ACT — LICENSES.

    The Solid Waste Management Act does not require an already licensed disposal area to obtain a new license when the entire stock of the corporation which operates the area is sold to another corporation (MCL 299.413; MSA 13.29[13]).

*Honigman, Miller, Schwartz & Cohn* (by *Robert*

*A. Fineman* and *Daniel P. Perk*), and *Luce, Henderson, Bankson, Heyboer, Lane, Burleigh & Currier* (by *David R. Heyboer*), for Bill Kettlewell Excavating, Inc.

*Robert H. Cleland,* St. Clair County Corporation Counsel, and *Beier, Howlett* (by *Lawrence R. Ternan* and *Margaret Battle Kiernan*), for the St. Clair County Health Department and Jon Parsons.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Thomas J. Emery* and *Leo H. Friedman,* Assistant Attorneys General, for the Department of Natural Resources.

Before: McDONALD, P.J., and HOOD and REILLY, JJ.

PER CURIAM. These consolidated appeals arose from plaintiff's operation of the Fort Gratiot Sanitary Landfill in St. Clair County. In Docket No. 113350, plaintiff appeals by leave granted from a circuit court order requiring it either to apply for a new operating license or to obtain approval from the Department of Natural Resources for the transfer of the existing license issued to plaintiff prior to the sale of its stock. In Docket No. 118031, defendants St. Clair County Health Department and Jon B. Parsons, its director, appeal as of right from the court's order dismissing their counterclaims initiated because of plaintiff's importation and disposal of out-of-state waste.

I

On September 1, 1987, the DNR granted an operating license to the Fort Gratiot Sanitary Landfill in Port Huron. Fort Gratiot is the assumed name for Bill Kettlewell Excavating, Inc., a Michigan

corporation. William T. Kettlewell, the sole stock-holder of his excavating company, was the "responsible person to contact" named on the operating license when issued.

In July 1988, Kettlewell Excavating's stock was sold to Stanwix Corporation, another Michigan corporation. Thereafter, William Kettlewell notified the DNR that he no longer was a shareholder in Bill Kettlewell Excavating, Inc., and that he no longer was involved in the operation of Fort Gratiot. Jon Parsons, director of the St. Clair County Health Department, notified representatives of Environmental Management Alternatives & Consulting, Inc., a principal shareholder of Stanwix Corp., that a new license naming another "responsible person to contact" was required for the continued operation of the Fort Gratiot Sanitary Landfill. In conjunction with this demand, Parsons issued a cease and desist order pursuant to § 17(2) of the Solid Waste Management Act (SWMA), MCL 299.401 *et seq.*; MSA 13.29(1) *et seq.*

Kettlewell Excavating commenced an action in circuit court against the St. Clair County Health Department, seeking to enjoin enforcement of the cease and desist order; a preliminary injunction was granted.

The St. Clair County Health Department and Jon Parsons counterclaimed, seeking (1) to require Kettlewell Excavating to obtain a new operating license for the landfill because of the sale of stock, and (2) to prevent Fort Gratiot from importing and disposing of out-of-state waste. The DNR intervened and also filed counterclaims against Kettlewell Excavating that requested the same relief. In addition, both the St. Clair County Health Department and the DNR requested a preliminary injunction on both claims in their countercomplaints.

Kettlewell Excavating's motion for summary

disposition of the counterclaims was entertained by the trial court along with counter-plaintiffs' requests for preliminary injunctions. The trial court granted a preliminary injunction to prevent further importation and disposal of out-of-state waste by Fort Gratiot. The court also ruled that the sale of Kettlewell Excavating's stock required the corporation either to obtain a new operating license or to obtain the DNR's approval for a transfer of the existing license.

During the pendency of the counterclaims, the Solid Waste Management Act was amended to require explicit authorization for the importation and disposal of out-of-state waste to be included in the approved solid waste management plans of the importing and exporting counties. See MCL 299.413a; MSA 13.29(13a) and MCL 299.430(2); MSA 13.29(30)(2). Kettlewell Excavating moved to dismiss the counterclaims as moot on the basis of the amendments, but indicated that it intended to challenge the constitutionality of those amendments in federal court. In addition, Kettlewell Excavating informed the trial court that it would discontinue its importation and disposal of foreign waste pending resolution of its constitutional challenge. The trial court then dismissed the counterclaims with prejudice, and denied counter-plaintiffs' motion for reconsideration.

II

In Docket No. 113350, Kettlewell Excavating appeals by leave granted the circuit court's order requiring it either to apply for a new operating license or to obtain approval from the DNR to transfer its existing license. Plaintiff raises two independent bases for reversal: (1) that a change in stock ownership of a licensed landfill facility

does not mandate the acquisition of a new operating license, and (2) that defendants failed to comply with the statutory prerequisites under the SWMA and the Administrative Procedures Act MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, for the suspension or revocation of its operating license.

A

We agree with plaintiff that the trial court erred in ruling, as a matter of law, that the sale of Kettlewell Excavating's stock required it either to apply for a new license or to seek approval from the DNR for a transfer of its existing license. We reach this conclusion on the basis of our reading of the SWMA, the administrative rules promulgated thereunder, and general principles of corporate law.

Section 13 of the SWMA[1] addresses the necessity of the acquisition of an operating license for solid waste disposal areas, and provides in part:

(1) A person shall dispose of solid waste at a *disposal area licensed* under this act unless a person is permitted by state law or rules promulgated by the department to dispose of the solid waste at the site of generation.

(2) Except as otherwise provided in this section or in section 22a, *a person* otherwise allowed under this act to own or operate a solid waste disposal area *shall not conduct, manage, maintain, or operate a disposal area* within this state *without a license* from the director, contrary to an approved solid waste management plan, or contrary to a permit, license, or final order issued under this act. *A person* who *intends* to conduct, manage, maintain, or operate a disposal area shall make a *prior license application* to the director

---

[1] MCL 299.413; MSA 13.29(13).

through a certified health department. [Emphasis added.]

The SWMA specifically defines the term "person" to include a corporation. MCL 299.405(8); MSA 13.29(5)(8).[2] Consequently, Bill Kettlewell Excavating, Inc., doing business as Fort Gratiot Sanitary Landfill, is prohibited from operating the disposal area without a license issued by the DNR. It is undisputed that Fort Gratiot made a prior application and was granted a license by the DNR for its intended operation of the disposal area. However, § 13 does not specifically require an already licensed disposal area to obtain a new license when the stock of the corporation has been transferred. In fact, the entire act is silent on the effect of the sale of stock on the continued viability of a previously issued operating license. Unless such legislative intent can be discerned from the statutory language, we will not read such a requirement into the act.

Bill Kettlewell Excavating, Inc., was a viable and certified Michigan corporation when it was granted an operating license for Fort Gratiot in 1987. Defendants argue, however, that because William Kettlewell sold his entire interest in the corporation, Fort Gratiot was required to apply for a new license before the expiration of its existing license.[3] Fundamental principles of corporate law reveal, however, that this claim is without legal support.

A corporation is a legal entity distinct from its shareholders, even though all of the stock is held by a single individual. *Bourne v Muskegon Circuit Judge,* 327 Mich 175, 191; 41 NW2d 515 (1950).

[2] Prior MCL 299.405(4); MSA 13.29(5)(4).

[3] Pursuant to MCL 299.415(2); MSA 13.29(15)(2), an operating license expires two years after the date of issuance.

Therefore, while the sale of stock will change the composition of the equity owners of the corporation, the sale does not alter the distinct legal existence of that corporation. *O D Silverstein, MD, PC v Services, Inc,* 165 Mich App 355, 359; 418 NW2d 461 (1987). This remains true even if the purchaser of the stock is another corporation. 18 Am Jur 2d, Corporations, §§ 55, 57, pp 860, 864. Consequently, we find that Bill Kettlewell Excavating, Inc., doing business as Fort Gratiot Sanitary Landfill, at all times retained its distinct legal existence apart from its prior and current shareholders. Fort Gratiot therefore, continued to be a duly licensed disposal area irrespective of the sale of its stock to Stanwix Corporation.

Defendants argue at length that, absent a requirement that plaintiff obtain a new license, neither the DNR nor the St. Clair County Health Department would be able to review and approve the qualifications of the "responsible individual." They claim that the act implicitly requires the acquisition of a new license and authorizes either entity to review the qualifications. Defendants rely on the rules promulgated pursuant to the act, specifically focusing on 1982 AACS, R 299.4315, which provides in part:

(2) A sanitary landfill operation shall be under the immediate direction of a responsible individual.

A "responsible individual" is defined as:

[A]n individual who is familiar with the requirements of the act and these rules as they relate to the daily operation and maintenance of the solid waste disposal area where he or she is employed and who has the capability and the authority to make decisions regarding the daily operation and

maintenance of that disposal area which are neces-
sary to comply with the act and rules. [1982
AACS, R 299.4104(1)(h).]

We do not agree with defendants that, absent a
requirement that Fort Gratiot obtain a new li-
cense, they would be prohibited from reviewing
and approving the qualifications of the "responsi-
ble individual," or that these rules implicitly rec-
ognize such a requirement. The act itself provides
defendants with considerable authority to oversee
and ensure a licensee's compliance with the act
and rules promulgated thereunder.[4]

We believe that these provisions in the SWMA
afford defendants comprehensive authority to re-
quire continued compliance with the act and rules.
We do not believe that defendants are prohibited
from demanding that plaintiff's landfill be under
the operation of a responsible individual. If, in
their determination, Fort Gratiot does not comply
with the act or rules, defendants may resort to the
various enforcement provisions delineated in the
act. In sum, the administrative rules are not a
factor in deciding whether a new license is re-
quired; rather, they relate to whether an existing
licensee is in compliance therewith.

On the basis of the foregoing, we conclude that
the trial court erred in requiring plaintiff to obtain
a new license or a transfer of its existing license
solely on the basis of the sale of Kettlewell Exca-
vating's stock to Stanwix Corporation.

B

Although we agree with plaintiff that the trial

---

[4] See, e.g., MCL 299.413(2); MSA 13.29(13)(2); MCL 299.413a; MSA
13.29(13a); MCL 299.414(2); MSA 13.29(14)(2); MCL 299.415(3); MSA
13.29(15)(3); MCL 299.417(2), (3), (4); MSA 13.29(17)(2), (3), (4); MCL
299.433(1), (2); MSA 13.29(33)(1), (2).

court's order requires reversal, we do not accept its argument that defendants failed to comply with the requisite procedures under the SWMA and the APA for the suspension or revocation of its license.

Contrary to plaintiff's contention, defendants Parsons and St. Clair County Health Department issued a cease and desist order pursuant to § 17(2) of the SWMA.[5] Kettlewell Excavating was the party that instituted the circuit court action to enjoin enforcement of that order. The director of the DNR had not issued a final order revoking plaintiff's license so that § 17(3) would have been implicated.

C

With respect to Docket No. 113350, we reverse the trial court's order that required plaintiff either to obtain a new operating license or to seek approval from the DNR for a transfer of the existing license. We are aware that plaintiff's license expired on September 1, 1989, pursuant to MCL 299.415(2); MSA 13.29(15)(2). Our resolution of this issue, however, permits plaintiff to seek renewal under § 15(2), rather than forcing it to initiate a formal application for a new license. Plaintiff's license must still be in compliance with the act and the rules, and defendants are still authorized to review the renewal request in order to ensure compliance.

III

In Docket No. 118031, defendants St. Clair County Health Department and its director, Jon Parsons, appeal as of right from the trial court's order dismissing with prejudice their counterclaim

[5] MCL 299.417(2); MSA 13.29(17)(2).

arising from Fort Gratiot's importation and disposal of out-of-state waste.[6]

Shortly after the issuance of the preliminary injunction, the SWMA was amended to specifically prohibit the importation of foreign waste as conducted by Fort Gratiot. See MCL 299.430(2); MSA 13.29(30)(2) and MCL 299.413a; MSA 13.29(13a). Plaintiff conceded that it could not support its defense in light of the amendments and informed the trial court that it would abide by the new law and discontinue importing foreign waste. Plaintiff moved to dismiss the counterclaim, arguing that no controversy continued to exist and thus the case was moot. Plaintiff then pursued its constitutional challenge of the amendments in federal court.

During the pendency of this appeal, however, the federal court ruled that the amendments of the SWMA regarding the importation and disposal of foreign waste did not violate the Commerce Clause. *Bill Kettlewell Excavating, Inc v Michigan Dep't of Natural Resources,* 732 F Supp 761 (ED Mich, 1990). This decision by the federal court is binding with respect to defendants' state court counterclaim. Therefore, res judicata bars further litigation of this issue. *Ingham Co Employees' Ass'n v Ingham Circuit Court,* 170 Mich App 118, 122; 428 NW2d 7 (1988). The trial court's order dismissing defendants' counterclaim is, therefore, affirmed.

We reverse the trial court's order in Docket No. 113350, and affirm the dismissal in Docket No. 118031.

---

[6] Intervening defendant-counter plaintiff DNR also filed a counter-complaint requesting the same relief as the county health department. The DNR's countercomplaint was also dismissed with prejudice, however, the DNR has not filed a claim of appeal from this order. Consequently, we will not address the propriety of the trial court's order as it pertains to the DNR.