BELLE ISLE GRILL CORPORATION v CITY OF DETROIT

Docket No. 231913. Submitted April 15, 2003, at Lansing. Decided May 6,
2003, at 9:05 A.M.

Belle Isle Grill Corporation and Wissam Hannawa, its principal and
shareholder, brought an action in the Wayne Circuit Court against
the city of Detroit and five individual defendants, alleging that an
operations order of the city police department authorizing the
restriction or diversion of traffic on Belle Isle during periods of
traffic congestion, violated the terms of a lease agreement between
the plaintiff corporation and the city for the operation of a refresh-
ment stand on Belle Isle. The individual defendants were dismissed
from the suit, and the city filed a motion to dismiss and to strike
the plaintiffs' twenty-count complaint. The trial court, Robert L.
Ziolkowski, J., granted the city's motion to strike several counts
and to combine other counts, and then granted summary disposi-
tion regarding the remaining claims. The trial court also dismissed
Hannawa for lack of standing. The plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court did not err in striking several of the plaintiffs'
claims and combining other claims that were redundant under
MCR 2.115. The defendant's motion to strike was not untimely filed
under MCR 2.108(B) when it was not filed within the time for filing
a motion in response to a pleading, because MCR 2.108(B) does not
control motions brought under MCR 2.115(B), and thus a motion to
strike may be filed at any reasonable time.

2. Michigan law treats a corporation as entirely separate from its
shareholders. Here, the parties to the lease agreement were the
plaintiff corporation and the city. Thus, the trial court properly dis-
missed Hannawa from the lawsuit on the ground that he lacked
standing, because Hannawa did not allege claims distinct from
those of the corporate entity.

3. The trial court did not err in granting summary disposition
regarding the plaintiffs' constructive eviction claim under MCL
600.2918, because the plaintiffs failed to allege any facts that would
warrant relief under the statute.

4. The trial court did not err in granting summary disposition
regarding the plaintiffs' claim of breach of express or implied war-

ranty that the leasehold would be fit for its intended purpose, because the lease agreement expressly stated that the plaintiff corporation took the premises "as is," and that the city made no warranties or representations with regard to the premises.

5. The trial court properly granted summary disposition regarding the plaintiffs' breach of the implied covenant of good faith and fair dealing claim, because Michigan law does not recognize such a cause of action.

6. The plaintiffs' claims of misrepresentation and fraud in the inducement were properly dismissed because Hannawa specifically testified that no one from the city ever made any representations regarding access to Belle Isle, the traffic situation, or the number of people who would visit the island.

7. The trial court did not err in granting summary disposition regarding the plaintiffs' claim for unjust enrichment based on the improvements the plaintiffs made to the premises, because the lease agreement expressly contemplated and covered capital improvements in lieu of rent.

8. The trial court properly dismissed the plaintiffs' breach-of-contract claim, because the alleged breaches were based on the city's acts of closing or clearing the streets of Belle Isle, which acts were done pursuant to the city's inherent police power, and thus the city is protected by governmental immunity from claims relating to the exercise of police power.

Affirmed.

PLEADING — MOTION TO STRIKE PLEADINGS.

A motion to strike need not be filed within the time frame established for filing a motion in response to a pleading; rather, a motion to strike may be filed at any reasonable time (MCR 2.115[B], 2.108[B]).

*Abbott, Nicholson, Quilter, Esshaki & Youngblood, P.C.* (by *George P. Butler, III*), for the plaintiff.

City of Detroit Law Department, and *Sharon D. Blackmon*, Assistant Corporation Counsel, for the defendant.

Before: WHITBECK, P.J., and FITZGERALD and ZAHRA, JJ.

PER CURIAM. Plaintiffs, Belle Isle Grill Corporation and Wissam Hannawa[1] (hereinafter collectively referred to as "plaintiff") appeal as of right, and defendant city of Detroit cross-appeals,[2] the order granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(7), (8), and (10) in this case arising from the alleged breach of a lease agreement entered into by defendant and plaintiff in August 1996.

In 1995, defendant solicited bids for the leasing, capital improvement, and operation of concession stands at various recreation areas throughout the city. One of the stands was formerly known as the "Lakeside Refreshment Stand" and was located on the eastern end of Belle Isle on Lakeside Drive. This end of Belle Isle is accessible only by traveling on a street named "The Strand," which runs along the southern shore of Belle Isle.

Wissam Hannawa learned of the potential business opportunity through a friend, former Detroit police officer Keith Chisolm. In 1996, Hannawa and Chisolm visited Belle Isle frequently to determine whether a grill at the stand would be a viable business. Given the large volume of traffic that they witnessed, Hannawa, Chisolm, and Hatem Hannawa[3] submitted a business proposal to defendant for the improvement and operation of the Lakeside Refreshment Stand. The business proposal submitted to defendant recognized a potential problem:

---

[1] Wissam Hannawa was dismissed from the lawsuit for lack of standing.

[2] The cross-appeal presents arguments in support of the grant of summary disposition.

[3] Hatem Hannawa is a relative of Wissam Hannawa.

Constantly visiting the island during various business
hours was a useful tool for increasing our awareness of the
potential assets and liabilities. For example, crowds during
the morning and afternoon business hours were more calm
and mature, while the evening visitors were more active
and difficult to control, partly as a result of traffic flow.
This type of varying behavior suggested to us that public
access during peak hours is a necessity and keeping cus-
tomers moving is one way to prevent trouble from
occurring.[4]

Defendant accepted the plaintiff's bid. "Belle Isle
Grill" was incorporated and it entered into a lease
agreement with defendant in August 1996 for the
operation of the stand. Under the terms of the agree-
ment, rent was set at the greater of $4,800 a year or
ten percent of gross revenues less sales tax. The lease
agreement provided that defendant agreed to "waive
the minimum annual payment or percentage of Gross
Revenues during the capital investment period provid-
ing that all stipulations have been met and the Lessee
presents to the Department documentation of com-
pletion and cost."

On February 6, 1997, the Detroit Police Department
issued an operations order regarding the E. Jefferson
Corridor, Belle Isle, and Chene Park. Among the
problems the order sought to remedy was the prac-
tice of "cruising" by large numbers of young motorists
during warm weather, which practice led to traffic
gridlock. The operations order noted that in addition
to traffic-flow issues, some of the participants "use
this opportunity to disturb the area residents and

---

[4] Before submitting the bid proposal, Chisolm knew that defendant
cleared and closed different parts of Belle Isle because of large numbers
of people congregating on the island. He knew that after the area of con-
cern was cleared, the area would open back up after a short period.

businesses with loud music, profanity and open drinking of alcohol." The order noted that this conduct "is the basis for numerous complaints among citizens who reside, work or wish to recreate in the immediate area or in downtown Detroit."

The purpose of the operations order was "to improve the ability of citizens to peacefully utilize Chene Park, Belle Isle and the E. Jefferson corridor." One method of implementing this agenda was "[d]ispersing persons, when due to the concentration of traffic or people, conditions inhibit the ability of emergency response to the area." The order also noted that the MacArthur Bridge is the only route of ingress and egress to the island and that "the flow of traffic on this bridge must be kept moving at all times." The order authorized the closing of the island "to prevent or relieve overcrowding," and also authorized the implementation of an island "sweep" to direct all vehicles off the island if conditions so required.

The Belle Isle Grill opened for business in June 1997. Hannawa testified that access to his stand was frequently eliminated because the police department blocked access to that part of the island. Hannawa testified that he believed the rerouting of traffic was done to force his business off the island. He explained that blockages occurred "whenever they [the police] felt like they couldn't control the crowd, so they rerouted everybody the other way." Hannawa admitted that the island became crowded when the weather was good. He also admitted that he observed teenagers stop their vehicles in the middle of the road and drink alcohol, thereby blocking traffic. Hannawa testified that he never discussed with the city or its

agents issues regarding access to the island or traffic. He also testified that defendant never made any representations regarding the number of people who would be in the vicinity of the stand. He further testified that he did not keep any documentation regarding the times or dates that access to his stand was allegedly interrupted, nor did he keep any documentation regarding the days that he allegedly had to send employees home early because of the lack of business.

The Belle Isle Grill ceased operations on the island shortly after Labor Day in September 1997, and eventually removed all of its personal property and equipment from the premises. Plaintiff filed a twenty-count complaint against the city based on the operations order of the Detroit Police Department, the improvements made on the island to benefit the Detroit Grand Prix, and the use of the Belle Isle Grill parking lot. Hannawa was identified as the Belle Isle Grill Corporation's "principal and a shareholder."

The complaint was removed to the United States District Court, but the state claims against the city and the claim of gross negligence against the individual defendants were remanded to the state court. The individual defendants were dismissed with prejudice following mediation by order of the trial court entered March 28, 2000.

On July 3, 2000, defendant filed a "motion for summary disposition and/or to strike plaintiff's claims." This motion attacked all of plaintiff's remaining claims and urged the court to find that Hannawa, as shareholder of a corporation, lacked standing to pursue any claim. The motion originally set the date for hearing on July 21, 2000, but was re-noticed for July

28, 2000, to allow plaintiff twenty-one days to file a response.

The hearing was held on July 28, 2000. On December 21, 2000, the trial court issued its opinion and order in which it dismissed Hannawa from the lawsuit because of lack of standing, and dismissed all of plaintiff's claims against defendant.

I

Plaintiff first argues that the trial court erred by granting defendant's motion to strike several of the counts and combine other counts on the ground that the counts were redundant. This Court reviews a trial court's decision regarding a motion to strike a pleading pursuant to MCR 2.115 for an abuse of discretion. *Jordan v Jarvis*, 200 Mich App 445, 452; 505 NW2d 279 (1993).

MCR 2.115(B), which governs motions to strike, provides:

> On motion by a party or on the court's own initiative, the court may strike from a pleading redundant, immaterial, impertinent, scandalous, or indecent matter, or may strike all or part of a pleading not drawn in conformity with these rules.

Plaintiff's assertion that defendant used the motion to strike to test the legal sufficiency of the pleadings is misplaced. Defendant sought to strike the claims as redundant, and sought summary disposition of the remaining claims.

Plaintiff also contends that the motion to strike was untimely under MCR 2.108(B), which governs the time for filing a motion in response to a pleading. Case law has not addressed this issue; however, the

Authors' Commentary regarding Rule 2.108 in 2 Martin, Dean & Webster, Michigan Court Rules Practice, § 2108.2, pp 199-200, states:

> The basic rule is that a party has 21 days after personal service of a summons and complaint in Michigan to answer or take other action permitted by law or the rules, e.g., filing a motion for summary disposition under MCR 2.116.
>
> Subrule (B), although it literally requires that a motion attacking a pleading be served and filed within the time for filing a responsive pleading, should be understood in context. The effect of the rule should not be that a motion will not be permitted after that point, but rather that a motion must be filed within the period for a responsive pleading in order to delay the time for the response itself. Without such an understanding, subrule (B) would be in conflict with MCR 2.116(B)(2), which provides that a motion for summary disposition (which includes a motion on the grounds that the opponent has "failed to state" a claim upon which relief may be granted—a clear attack on a pleading) may be made at "any time."
>
> However, if MCR 2.108(B) is limited to the function mentioned above, it fails to provide when motions for a more definite statement or motions to strike, under MCR 2.115, must be made. As to motions for more definite statement, the Court of Appeals has held that they may not be made after the responsive pleading is served and filed, since their purpose is to enable the movant to frame the responsive pleading.
>
> That leaves unanswered the question whether MCR 2.108(B) requires a motion to strike to be made within its time limits, or whether, as discussed above, MCR 2.108(B) should be limited to determining when a motion must be filed to toll the time for filing a responsive pleading. The latter interpretation is preferable, given the reasons for which a motion to strike may be made. As explained in the Authors' Commentary on Rule 2.115, the motion is not proper for substantive attacks on the pleadings, but only for attacks on their formal propriety. Since the motion may be used, for example, to demand the removal of "scandalous"

or "indecent" material, there would be no purpose in limiting the time in which the motion may be made.

In summary:

—Although MCR 2.108(B) by its own terms says that a motion attacking a pleading "must be served and filed within the time for filing the responsive pleading," its only effect is to impose that time limit for purposes of delaying the need to file the responsive pleading under MCR 2.108(A).

\*     \*     \*

—Good policy suggests that a motion to strike under MCR 2.115(B) be allowed at any time.

We agree with the Authors' Commentary, and conclude that the time limit imposed under MCR 2.108(B) should not be interpreted to control motions under MCR 2.115(B). Rather, a motion to strike should be allowed at any reasonable time.

Plaintiff also argues that "the trial court erred in finding that multiple claims are not permitted." In support of this argument, plaintiff cites MCR 2.111(A)(2), which allows a party to allege inconsistent claims or defenses. MCR 2.111(A)(2) addresses *inconsistent* claims, not *redundant* claims. Here, the trial court specifically declined to strike any claims that were not identical to other claims. The court did not strike inconsistent claims and, therefore, plaintiff's reliance on MCR 2.111(A)(2) is misplaced.

Plaintiff also maintains that the trial court erred by consolidating some of its claims because "the complaint perfectly pleads all the elements to each of the claims . . . ." Although the trial court consolidated the counts arising from the lease, and also consolidated the count alleging "rescission, reformation, restitu-

tion" with the count alleging "mistake," the court separately addressed each claim in its opinion and order granting summary disposition. Therefore, plaintiff cannot demonstrate any prejudice arising from the consolidation.

II

Plaintiff next asserts that the trial court improperly granted summary disposition of each of the remaining counts. On appeal, a trial court's grant or denial of summary disposition is reviewed de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

A

Initially, plaintiff contends that the trial court should not have entertained defendant's motion for summary disposition because it was filed untimely and without proper notice. With regard to the issue of timeliness, plaintiff simply states that, "[t]his action was filed on January 21, 1998, and was scheduled for trial on July 31, 2000. Not until July 3, 2000, more than two years after this action began and less than a month before trial did Appellee file its motion for summary disposition." Plaintiff provides no argument or authority in support of this position and, therefore, this portion of the argument need not be addressed. See, e.g., *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998). Nonetheless, MCR 2.116(B)(2) provides that a motion for summary disposition may be brought at "any time."

B

Plaintiff also argues that defendant failed to file the motion for summary disposition at least twenty-one days before the time set for hearing as required by MCR 2.116(G)(1)(a)(i). It contends that the hearing on the motion was scheduled for July 21—only eighteen days after the motion was filed. Plaintiff concedes that the hearing was actually held on July 28, 2000, but contends that the defendant did not provide written notice of the July 28 hearing.

A review of the lower-court record reveals that defendant filed a motion for summary disposition on July 3, 2000, and noticed the hearing for July 21, 2000. A "Re-Notice of Hearing" regarding the motion was filed on July 12, 2000, and noticed the hearing for July 28, 2000. A proof of service in the record indicates that a copy of the "Re-Notice of Hearing" was mailed to plaintiff's attorney on July 10, 2000. Thus, the record does not support the assertion that defendant failed to provide written notice of the July 28, 2000, hearing date.

C

Plaintiff additionally contends that the trial court wrongfully dismissed Hannawa from the lawsuit on the ground that he lacked standing. Hannawa maintains that he has a personal stake and a substantial interest in the outcome of the matter and, therefore, has an equitable right to sue. We disagree. The parties to the lease contract were Belle Isle Grill Corporation and the city of Detroit. In Michigan, the law treats a corporation as entirely separate from its shareholders, even where one person owns all the corporate

stock. *Industrial Steel Stamping, Inc v Erie State Bank*, 167 Mich App 687, 692, 423 NW2d 317 (1988). Because Hannawa has not alleged claims distinct from those of the corporate entity, he lacked standing to sue defendant. The doctrine of standing provides that a suit to enforce corporate rights or to redress or prevent injury to a corporation, whether arising from contract or tort, ordinarily must be brought in the name of the corporation, and not that of a stockholder, officer, or employee. *Michigan Nat'l Bank v Mudgett*, 178 Mich App 677, 679; 444 NW2d 534 (1989). While an exception exists when the individual can show a violation of a duty owed directly to the individual that is independent of the corporation, *id.*, that exception is inapplicable here. The exception does not arise merely because the alleged violation resulted in injury to both the corporation and the individual; rather, it is limited to cases in which there is a breach of duty that is owed to the individual personally. *Id.* at 679-680.

D

Plaintiff contends that the trial court erred by granting summary disposition of each of nine remaining counts. We disagree.

CONSTRUCTIVE EVICTION OR EJECTION

MCL 600.2918 governs claims of constructive eviction or ejection. Michigan has long recognized the theory of constructive eviction. See *Grove v Youell*, 110 Mich 285, 291; 68 NW 132 (1896). Constructive eviction occurs "when the act of the landlord is of such a character as to deprive the tenant . . . of the

beneficial use and enjoyment of the whole or any part of the demised property, to the extent he is thus deprived." *Bamlet Realty Co v Doff*, 183 Mich 694, 703; 150 NW 307 (1915). Constructive eviction can also be found where a landlord fails to supply essential services. See *Everson v Albert*, 261 Mich 182, 186; 246 NW 88 (1933). MCL 600.2198(2) defines the elements of unlawful interference with a possessory interest. Plaintiff did not allege any facts in the complaint that would fall within the parameters of MCL 600.2198(2). Therefore, the trial court properly granted summary disposition pursuant to MCR 2.116(C)(8).

## BREACH OF EXPRESS OR IMPLIED WARRANTY

Plaintiff alleged that defendant breached an express or implied warranty "that the leasehold would be fit for the purpose for which it was intended and for which plaintiff intended it." Plaintiff argues that defendant made the following express and implied warranties:

A. The lease would be fit and usable as a profit-making restaurant and convenience store.

B. The tenant would have the leasehold for at least ten years.

C. The tenant would enjoy the leasehold.

. D. The leasehold could sustain capital improvements of in excess of $290,000.

The lease expressly provided that "[n]either City nor the City's agents have made any representations or warranties with respect to the Premises or this Lease, except as expressly set forth herein, and no rights, or remedies are or shall be acquired by State

by Implication or otherwise unless expressly set forth herein." The lease also provided in § 5.02 that, "[t]he lessee has examined and inspected the premises and takes same 'AS IS'." That section also provides that the city makes "no warranties or representations of whatever nature in connection with the condition of the Premises . . . ." The language of the lease contract bars any action for breach of express or implied warranties.[5]

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff maintains that "there is an implied covenant of good faith and fair dealing in every contract," and for its sole argument states that "[w]hether Appellee's admittedly unfair treatment of Appellants constitutes a breach of this implied covenant is for the Jury to decide but clearly, it has been plead [sic]." The trial court properly ruled that Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing, see *Ulrich v Federal Land Bank of St. Paul*, 192 Mich App 194, 197; 480 NW2d 910 (1991), and therefore properly dismissed this claim.

### FRAUD/MISREPRESENTATION/FRAUD IN THE INDUCEMENT

With regard to the claim of fraud/misrepresentation, plaintiff alleged that "[t]he City's acts, omissions, statements, and silences as hereinbefore detailed coupled with Plaintiff's responses thereto,

---

[5] In essence, plaintiff is arguing that defendant made an implied warranty that plaintiff's business venture would be successful. This position borders on absurd.

also as hereinbefore detailed, constitute actionable fraud and misrepresentation on the part of the City." With regard to the claim of fraud in the inducement, plaintiff alleged that "Plaintiff was fraudulently induced by the City into rehabilitating the leasehold premises and into executing the lease for the leasehold."

The alleged fraud committed by defendant "is the silence with respect to the Operations Policy enacted in February 1997." Actionable fraud consists of the following elements:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*M&D, Inc v McConkey*, 226 Mich App 801, 806; 573 NW2d 281 (1997), citing *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976).]

Plaintiff's complaint alleged that defendant or its agents made numerous representations regarding the leased premises. However, in his deposition Wissam Hannawa testified that there were never any discussions at any of the meetings with defendant about access to the island or any traffic, and that neither the city nor its representatives ever made any statements about the number of people who would visit the island or be in the vicinity of the island. In fact, Hannawa testified that there were no representations at all about access to the island or the traffic pat-

terns. Summary disposition of this claim was there-
fore properly granted.

Plaintiff's argument with regard to these claims is
premised on a finding that the trial court erred by
granting summary disposition of the fraud claim.
Because the trial court properly granted summary dis-
position of the fraud claim, this issue is without
merit.

Plaintiff contends that the trial court improperly
dismissed the claim for unjust enrichment on the
ground that the lease between the parties expressly
provided that plaintiff would receive a credit for rent
for the improvements plaintiff made to the property.
In order to sustain the claim of unjust enrichment,
plaintiff must establish (1) the receipt of a benefit by
defendant from plaintiff, and (2) an inequity resulting
to plaintiff because of the retention of the benefit by
defendant. *Barber v SMH (US), Inc*, 202 Mich
App 366, 375; 509 NW2d 791 (1993). If this is estab-
lished, the law will imply a contract in order to pre-
vent unjust enrichment. *Martin v East Lansing
School Dist*, 193 Mich App 166, 177; 483 NW2d 656
(1992). However, a contract will be implied only if
there is no express contract covering the same sub-
ject matter. *Id.*

Here, the lease between the parties expressly
provides:

CAPITAL IMPROVEMENTS

The Lessee provides that the following schedule of capital improvements will be accomplished within the time frame depicted. The first year will commence on the approval date of the City Council. The Lesse [sic] shall seek the Department's approval on all renovations, additions, and improvements and upon approval be responsible to obtain any necessary licenses, permits, or approvals from other City agencies, or other regulatory agency as necessary.

The Department agrees to waive the minimum annual payment or percentage of Gross Revenues during the capital investment period providing that all stipulations have been met and the Lessee presents to the Department documentation of completion and cost.

Because the lease expressly contemplated and covered capital improvements in lieu of rent, plaintiff cannot recover the costs of improvement by implied contract and, therefore, the trial court properly granted summary disposition of this claim as a matter of law.[6]

### VIOLATION OF STATE CONSTITUTION

Plaintiff contends that the trial court dismissed the state constitutional claim of "taking without due process or just compensation" without addressing the claim on the mistaken belief that plaintiff did not allege a violation of the Michigan Constitution but, rather, only the United States Constitution. A plain reading of plaintiff's complaint reveals that, even though plaintiff labeled the count as one involving state constitutional claims, plaintiff did not plead a

---

[6] Plaintiff argues that the lease did not "cover how plaintiffs would receive their money back should Appellee breach the lease." However, plaintiff included the cost of improvements as an element of damages in its claim for breach of lease.

specific cause of action under the state constitution and only sought damages pursuant to federal law. Thus, the trial court properly dismissed this count.

INJUNCTIVE RELIEF

Plaintiff contends that the trial court erred by dismissing the claim for injunctive relief as moot on the ground that plaintiff had vacated the property. It contends, "[t]he trial court failed to consider that to make Appellants whole may require that Appellee be required to allow Appellants to continue leasing the property without the interruptions of Appellee." This contention is the sum and substance of plaintiff's argument, and it does not cite any authority to support the argument. Thus, this issue is not properly presented and this Court declines to address it. *Silver Creek Twp v Corso*, 246 Mich App 94, 99; 631 NW2d 346 (2001).

BREACH OF CONTRACT

Plaintiff argues that the trial court improperly dismissed the claims for breach of contract/lease and quiet enjoyment because these claims are contract claims not subject to the defense of governmental immunity. While plaintiff's premise is correct, a review of plaintiff's complaint reveals that plaintiff alleged that defendant breached the lease by closing The Strand and clearing Belle Isle.

Under the provisions of Const 1963, art 7, § 22 and the Home Rule City Act, MCL 117.3 *et seq.*, municipalities have been granted the authority to enact laws pertaining to municipal concerns including those involving "[t]he public peace and health and for the

safety of persons and property." MCL 117.3(j). Defendant is a home rule city. Among the powers that may properly be exercised by a home rule city is the police power. Except where limited by constitution or statute, "the police power of Detroit as a home rule city is of the same general scope and nature as that of the state." *People v Sell*, 310 Mich 305, 315; 17 NW2d 193 (1945). The state, pursuant to its inherent police power, may enact regulations to promote the public health, safety, and welfare. *Blue Cross & Blue Shield of Michigan v Governor*, 422 Mich 1, 73; 367 NW2d 1 (1985). Thus, it is clear that defendant had the authority to enact the operations order for the public health, safety, and welfare of its citizens.

The constitutional right to engage in any business is qualified in that it is subject to a proper exercise of the police powers of the state. *Grocers Dairy Co v Dep't of Agriculture Director*, 377 Mich 71, 76; 138 NW2d 767 (1966). One of the conditions of all leases is that the lessee shall be subject to such interference or disturbance of his possession as results from the exercise by public authorities of their rights under either the power of eminent domain or police regulations. *Tucker v Gvoic*, 344 Mich 319, 323; 74 NW2d 29 (1955). The fact that a party's property interest "was in the first instance derived from a contract with the state does not and could not thereby exempt that property interest from the proper exercise of the state's police power." *Michigan Oil Co v Natural Resources Comm*, 71 Mich App 667, 687; 249 NW2d 135 (1976).[7]

---

[7] In *Michigan Oil Co, supra,* the plaintiff had leased land from the Department of Natural Resources for purposes of drilling. That same

Here, defendant did not do anything to interfere with the terms of the lease. Rather, it was defendant's exercise of its responsibilities as a policing authority that occasioned the actions complained of. Under these circumstances, defendant is protected by governmental immunity from claims arising from the exercise of its police power, regardless of the label put on the claim.[8]

Affirmed.

---

department subsequently denied plaintiff a permit for drilling, having concluded that drilling would endanger wildlife.

[8] For these same reasons, summary disposition of the counts alleging gross negligence, trespass, intentional interference with contract, and intentional interference with business relations was appropriate.