**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0443n.06
Filed: June 25, 2007

No. 06-2087

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ARON ALAN, LLC and ARON SCHROTENBOER, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiffs-Appellants, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| TANFRAN, INC. and BRYAN PUNTURO, | ) | **O P I N I O N** |
| | ) | |
| Defendants-Appellants. | ) | |

**BEFORE:** GIBBONS and COOK, Circuit Judges; and CLELAND, District Judge.[*]

**CLELAND, District Judge.** In this commercial dispute between a tanning salon franchisor and franchisee, Plaintiffs-Appellants appeal the opinion and order of the district court granting summary judgment to the franchisor, Defendants-Appellees. The district court found that no reasonable prospective franchisee could have relied upon the several allegedly false profit and loss statements presented by Defendants-Appellees, but rather would have been prompted to further inquiry, demanding an explanation of the "widely divergent" and internally inconsistent figures in the statements. We affirm.

**I.**

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

Defendant-Appellee Tanfran, Inc. ("Tanfran") sells and manages tanning salon franchises under the MIRAGE trademark. Defendant-Appellee Bryan Punturo is the president and sole officer of Tanfran. Plaintiff-Appellant Aron Schrotenboer[1] met with Punturo in 1999 in Plainfield, Michigan to discuss purchasing the MIRAGE franchise in Plainfield. Schrotenboer would eventually sign four franchise agreements for the following locations in Michigan: (1) Rockford, (2) Cadillac, (3) Grand Rapids, (the "Beltline" location) and (4) Walker (the "Standale" location).

Before signing, Schrotenboer received a number of financial documents about the past performance of various franchises in western Michigan and northern Indiana. During the meeting he received profit and loss statements for the Plainfield location for (1) January through December 1998 and (2) January through February 1999. Both documents include handwritten notations and calculations made by Schrotenboer and his father, who accompanied him at the meeting. After the meeting, Punturo mailed Schrotenboer additional material, including a "Presentation Outline" and "Sheet 13," which showed revenue for the Plainfield location for March through December 1997 and January through February 1998. Sheet 13, based on the months listed, reported Plainfield income in 1997[2] as $181,357 and $43,066 for 1998. According to the Presentation Outline, the 1998 income was $435,000 for Fort Wayne, $325,000 for Plainfield and $425,000 for Grand Rapids (28th Street).[3]

---

[1]Schrotenboer died during the course of litigation and his estate was substituted as a plaintiff before the instant appeal.

[2]Plaintiffs-Appellants would later learn that the Plainfield location had not yet opened in 1997.

[3]The handwritten notations on this document calculate average income per month at each location.

Schrotenboer formed Aron Alan, LLC in 2000, signed the first franchise agreement in February 2000 and signed the last franchise agreement in January 2002. Plaintiffs-Appellants contend that they relied on the above information when they decided to enter the franchise agreements.

In the spring of 2004, Schrotenboer met with two other franchisees to discuss problems they were having with Defendants-Appellees. That summer, Plaintiffs-Appellants obtained documents that provided different financial figures--specifically, lower annual profits--than the ones Defendants-Appellees presented in 1999. In August 2004, Plaintiffs-Appellants initiated this action, seeking rescission of the franchise agreement and monetary damages for claims of fraud, breach of contract and unjust enrichment, as well as claims under MFIL, Mich. Comp. Laws §§ 445.1501 *et seq*, and RICO, 18 U.S.C. §§ 1961 *et seq*.[4]

Defendants-Appellees moved for summary judgment on several grounds, all of which the district court did not reach when it granted the motion. The district court dismissed Plaintiffs-Appellants' fraud, RICO and MFIL claims on the grounds that the alleged reliance was unreasonable as a matter of law. Relying on Michigan case law requiring reasonable reliance for a fraud claim, the district court observed, "[g]iven the conflicting information that Schrotenboer possessed, the Court concludes that no reasonable person would have relied upon any of it without making further inquiry of Defendants to ascertain the true facts." The district court elaborated:

> Upon comparing the Sheet 13 and the Outline to the profit and loss statements, a reasonable person would have been prompted to inquire of Defendants which gross income figure for 1998 was correct - the $152,659.56 figure from the 1998 profit and

---

[4]Plaintiffs-Appellants filed their complaint in the Northern District of Indiana, but that court granted Defendants-Appellees' motion to transfer to the Western District of Michigan.

loss statement; the $325,000 figure from the Outline; or the $43,066 figure from the Sheet 13.

The district court described these figures as "widely divergent" and, thus, not appropriate for reasonable reliance, but instead for "further inquiry." According to the district court:

> The same is true for the 1998 figures for the Fort Wayne and Grand Rapids 28th Street locations in the Outline, even though Schrotenboer did not have conflicting figures for those stores, because the information that he possessed would have prompted a reasonable person to question the accuracy of the income figures in the Outline.[5]

Because reasonable reliance is a necessary element of MFIL and RICO claims, the district court held that Plaintiffs-Appellants' claims under those statutes fail for the same reason. The district court also found that the claims for breach of implied contract and unjust enrichment were defective because the court could not imply a contract where the valid franchise agreements, which are express contracts, already cover the subject matter.[6] Finally, the district court concluded that rescission is not available as a matter of law, acknowledging independent reasons on the merits for that outcome, but holding that the court "need not address those grounds in light of its conclusion that Plaintiff's MFIL and fraud claims fail for lack of reasonable reliance, thus precluding any basis for rescission." Plaintiffs-Appellants do not appear to challenge on appeal the court's holding regarding rescission.

---

[5]The district court expressed its conclusion more succinctly in its order denying reconsideration: "the information that Plaintiffs had available to them was so inconsistent and confusing that reliance upon *any* of the figures or information, without asking for clarification, would have been unreasonable."

[6]The district court also dismissed Plaintiffs' breach of contract claim for lack of damages, which Plaintiffs-Appellants do not challenge on appeal.

**II.**

This court reviews *de novo* the district court's grant of summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). The court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2005).

Plaintiffs-Appellants' fraud claim must establish the following elements: (1) Defendants-Appellees made a material representation, (2) that was false, (3) Defendants-Appellees knew it was false or made the representation recklessly, (4) Defendants-Appellees made the representation with the intention that Plaintiffs-Appellants would act upon it, (5) Plaintiffs-Appellants acted in reliance upon the representation and (6) Plaintiffs-Appellants suffered damage as a result of the reliance. *Bergen v. Baker*, 264 N.W.2d 376, 382 (Mich. 2004). The allegedly false statements must relate to past or existing facts, not to future promises or expectations. *Cook v. Little Caesar Enters., Inc.*, 210 F.3d 653, 658 (6th Cir. 2000). The statements at issue in this case qualify, for they were income statements that purported to state previous income. To the extent that Plaintiffs-Appellants consider these income statements projections of future income, they are not actionable under *Cook*. In this case, the district court and Defendants-Appellees assumed *arguendo* that the elements of fraud were present, focusing instead on whether Plaintiffs-Appellants' reliance was reasonable.

To recover, Plaintiffs-Appellants' reliance on the alleged misrepresentation must be reasonable. *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 553-54 (Mich. Ct. App. 1999); *Nieves v. Bell Indus., Inc.*, 517 N.W.2d 235, 238 (Mich. Ct. App. 1994). Unreasonable reliance includes relying on an alleged misrepresentation that is expressly contradicted in a written contract

that the plaintiff reviewed and signed. *Novak*, 599 N.W. 2d at 553-54; *Nieves*, 517 N.W.2d at 237-

38. In a case where a broker assured the plaintiffs that an investment was "risk-free" the court

stressed that the documentation involved in the transaction informed the plaintiffs of the risk. *Webb*

*v. First Michigan Corp.*, 491 N.W.2d 851, 854 (Mich. Ct. App. 1992). "Even a cursory review of

any of these documents would have enlightened plaintiffs that the investment was not 'risk free' as

represented by the broker." *Id.* "[T]here can be no fraud where the means of knowledge regarding

the truthfulness of the representation are available to the plaintiff and the degree of their utilization

has not been prohibited by the defendant." *Id.* at 853 (citing *Schuler v. Am. Motors Sales Corp.*, 197

N.W.2d 493 (Mich. Ct. App. 1972)). The court in *Schuler* held that misrepresentations about the

inventory of an automotive dealership were not actionable for the plaintiff who bought the dealership

because the true figures and value appeared in schedules that the plaintiff received before making

the deal. 197 N.W.2d at 495. "Plaintiff either knew or could have readily discovered every material

fact that was known by defendants at the time of sale." *Id.*

The parties dispute the effect of the so-called integration clause of the franchise agreement.

Defendants-Appellees contend that the integration clause precludes Plaintiffs-Appellants' claims

whereas Plaintiffs-Appellants argue that it has no such effect. Article 23.2 of the agreement states

the following:

> This Agreement is the entire agreement of the parties. Any representations,
> inducements, promises, and agreements, oral or otherwise, not contained herein shall
> have no force or effect in the construction of the rights and obligations of the parties
> created by this agreement. You acknowledge certain supplementary forms,
> documents and agreements are incorporated by reference into this Agreement as if
> set forth herein in their entirety, including but not necessarily limited to, the
> Nondisclosure Agreement, the Guaranty Agreement, the Franchise Data Sheet

> (Schedule A), the Location and Territory Designation Form (Schedule B), Collateral Lease Assignment for the Premises and the Operations Manuals.  This Agreement cannot be altered except by a subsequent written document signed by both parties specifically referring to this Agreement.

Further, Article 23.8 states that Plaintiffs-Appellants conducted an independent investigation, recognized the normal business risks associated with beginning a new business and had ample opportunity to consult with advisors.[7]  The above language does not expressly incorporate into the agreement the various income statements that Plaintiffs-Appellants received.  While the list of documents incorporated admits that there may be others, the contractual nature of the listed documents limits the kinds of documents that would reasonably fall into the same category.  A nondisclosure agreement and a guaranty, for instance, contain agreed-upon terms that are part of the transaction.  Informational financial records, which lack offer and consideration in the contractual sense, do not fit the same description.  Plaintiffs' argument for incorporation of the various financial documents is thus not persuasive.

Similarly, Defendants-Appellees incorporation argument fails for the same reason.  Nothing in the written agreement expressly contradicts the income figures that Plaintiffs-Appellants received.  This case is therefore somewhat different from the case law Defendants-Appellees cite, where alleged misrepresentations find their express contradiction in written material that is either part of, or integral to, the actual written agreement.  *See Novak*, 599 N.W. 2d 546; *Nieves*, 517 N.W.2d 235.  This observation, however, does not end the court's analysis.  This court must instead determine

---

[7]The copies of the first and third franchise agreements, as they were reproduced in the joint appendix before this court, appear to lack the pages that would contain Article 23.8.

whether the record raises a material question of fact concerning whether Plaintiffs-Appellants reasonably relied upon the documentation they received.

The record reflects that Plaintiffs-Appellants received at least three different figures for the 1998 income of the Plainfield location: (1) $43,066 from Sheet 13, (2) $152,659.56 from the profit and loss statement and (3) $325,000 from the Presentation Outline. The question is thus whether, construing the documents in the light most favorable to them, Plaintiffs-Appellants could have reasonably relied upon financial documentation that is inconsistent on its face. They could not. The actual performance of other franchise locations is highly relevant information for any potential franchisee. As such, the divergent figures Defendants-Appellees gave Plaintiffs-Appellants should have raised a red flag. A reasonable buyer would approach such a large transaction with caution and treat with great importance the seller's claims of actual income by other franchisees. Even if one removes from consideration the lowest figure, which accounted only for two months, there remains a great disparity between $325,000 and approximately $153,000. The disparity creates doubt about which financial document is accurate. That doubt would apply in turn to income reported in the same documents for other franchise locations. Because the alleged misrepresentations are inconsistent and confusing, the documents containing them are inherently untrustworthy. Any reliance on the documents is therefore unreasonable. The truth of the matter was not apparent in the supporting documents, *Schuler*, 197 N.W.2d at 495, but at the very least it was clear that there were competing representations of the truth. There can be no fraud where it is apparent that all the representations cannot simultaneously be true. *See Webb*, 491 N.W.2d at 853-54.

The terms of the written agreement bolster this conclusion.  Though the misrepresentations find no express contradiction in the written agreement, Plaintiffs-Appellants did agree to bear an important investigative responsibility.  The terms of the agreement impose an affirmative duty upon Plaintiffs-Appellants to enter the relationship with their eyes open and with the assurance that they are satisfied with the due diligence they undertook.  While the terms of the agreement pursuant to the above analysis do not of their own accord render Plaintiffs-Appellants' reliance unreasonable, they do inform the context in which Plaintiffs-Appellants operated.  Whether or not they could have independently discovered the true income levels of the franchises, they should have at least recognized that Defendants-Appellees failed to provide an intelligible answer that could inspire sufficient confidence for purposes of Plaintiffs-Appellants' reliance.

Reasonable or justifiable reliance is a necessary element of a claim under MFIL.  *Cook*, 210 F.3d at 659.  Similarly, where mail fraud or wire fraud is alleged as a predicate offense, reasonable reliance is an element of a RICO claim.  *See*, *e.g.*, *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).  The district court therefore did not err when it granted summary judgment against Plaintiff's claims under MFIL and RICO.  Finally, the above analysis provides no basis for invalidating the franchise agreements between the parties.  Under Michigan law this court may not imply a contract where an express contract covers the same subject matter, *see*, *e.g.*, *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271 (2003).  Accordingly, Plaintiffs-Appellants have no viable claims for breach of implied contract or unjust enrichment.

## III.

For the foregoing reasons, we affirm the judgment of the district court.