# STATE OF MICHIGAN

# COURT OF APPEALS

GERALD PEGUESE,

Plaintiff-Appellant,

v

PNC BANK NATIONAL ASSOCIATION and
DOMINIC GOYETTE,

Defendants-Appellees.

UNPUBLISHED
May 16, 2017

No.  330937
Wayne Circuit Court
LC No.  15-006100-CZ

Before:  SERVITTO, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting defendant PNC Bank National Association's  motion for summary disposition and dismissing this business-related dispute on the ground that plaintiff lacked standing to bring his claims of tortious inference with a business relationship or expectancy, aiding and abetting, and conspiracy.  We reverse.

Plaintiff was a certified minority vendor in the automotive industry and held a Vendor ID in his name that was issued to him several years ago by Chrysler Group, LLC.  He conducted business through several different corporate entities including EL Mechanical, Inc., in which he was the president and sole shareholder.  In 2008, plaintiff agreed to enter into a business "Arrangement" with defendant Dominic Goyette, who controlled Goyette Mechanical Company, Inc., whereby EL Mechanical would obtain mechanical work in the automotive industry specifically earmarked for certified minority vendors and Goyette would "mentor" plaintiff and EL Mechanical regarding administrative business issues like payroll, bonding, and banking.

In 2011, defendant PNC Bank entered into a loan facility with Goyette Mechanical, EL Mechanical, and Goyette-West, Inc., which included a line of credit and a borrowing base rider for the exclusive use of the "Arrangement."  According to plaintiff, defendant Goyette had a longstanding and personal relationship with the loan officer, Fred Mitchell, at PNC Bank.  PNC Bank always disbursed the funds under the loan facility to a bank account in the name of Goyette Mechanical and eventually the line of credit was $6,000,000.  Subsequently, according to plaintiff, Goyette completely controlled the operations of EL Mechanical—as was his plan from the beginning of their relationship—and took unfair financial advantage of both plaintiff and EL Mechanical with the assistance of PNC Bank.

-1-

Eventually, plaintiff terminated his involvement in the "Arrangement." PNC Bank declared the loan in default and commenced litigation in the federal court. Thereafter, a receiver was appointed and, at some point, the receiver ordered the cancellation of a project that was to be performed by EL Mechanical at a Chrysler facility over the July 4, 2014 holiday weekend. According to plaintiff, PNC Bank contacted the receiver, at the request of Goyette, and requested the cancellation of that project to further Goyette's plan to destroy the long-established business relationship that plaintiff had with Chrysler as a certified minority vendor. As a consequence of the receiver's cancellation of that project, plaintiff alleged, Chrysler placed plaintiff and EL Mechanical on a "suspension list" which prevented them from doing future business with Chrysler, as well as other automotive manufacturers.

Then plaintiff filed this lawsuit. In Count I of the first amended complaint, plaintiff asserted a claim of tortious interference with a business relationship or expectancy against Goyette. Plaintiff alleged that (1) he had a valid business relationship or expectancy with Chrysler and other customers, (2) Goyette had knowledge of the same, (3) Goyette engaged in "intentional interference inducing or causing a breach or termination of the relationship or expectancy," and (4) plaintiff was damaged as a result of Goyette's conduct. In Count II, plaintiff asserted a claim of aiding and abetting against PNC Bank. Plaintiff alleged that PNC Bank knew of Goyette's tortious interference and intentionally provided Goyette with "substantial assistance" to affect the wrong. In Count III, plaintiff asserted a claim of civil conspiracy against Goyette and PNC Bank, alleging that they combined to "accomplish an unlawful purpose, being the destruction of the reputation of [plaintiff] and the tortious interference with Chrysler[.]"

Eventually, defendant PNC Bank filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10) arguing, in relevant part, that plaintiff lacked standing to bring this lawsuit. PNC Bank argued that the contract that was cancelled by the receiver, and which gave rise to plaintiff's claims, was between Chrysler and EL Mechanical—plaintiff was not a party to that contract. At most plaintiff was the president and sole shareholder of EL Mechanical, but neither officers nor shareholders have standing to allege personal injury to a corporation. The law treats a corporation as entirely separate from its officers and shareholders, even when one person owns all the corporate stock. Accordingly, any lawsuit to enforce corporate rights or to redress injury to a corporation, whether arising by tort or contract, must be brought in the name of the corporation. PNC Bank argued that plaintiff was claiming to have suffered derivative damages arising from harm done to EL Mechanical through the alleged interference with its business relationship or expectancy with Chrysler. Thus, the tort was committed, if at all, against EL Mechanical. Plaintiff had no individual business relationship or expectancy with Chrysler; thus, he lacked standing to sue Goyette or PNC Bank and this case should be dismissed.

Plaintiff opposed defendant PNC Bank's motion for summary disposition arguing, in relevant part, that he had standing to bring this lawsuit because Goyette tortiously interfered with the business relationship between him, as an individual, and Chrysler Group. More particularly, it was he, not EL Mechanical, who was issued a Vendor ID by Chrysler years ago which allowed him to submit bids on work. And it was through that Vendor ID that plaintiff's various companies were provided work by Chrysler over the previous several years. There is an exception to the general rule that only a corporation can sue to redress injury to it and that is

"when the individual can show a violation of a duty owed directly to the individual that is independent of the corporation[.]" *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 474; 666 NW2d 271 (2003). In this case, plaintiff's own personal business relationship with Chrysler was the subject of his tortious interference claim; thus, he had standing to file this lawsuit.

PNC Bank filed a reply brief in support of its motion for summary disposition arguing, in relevant part, that it was immaterial that the Vendor ID was in plaintiff's name because Chrysler did not do business with plaintiff in his individual capacity. Rather, Chrysler only did business with various business entities in which plaintiff was an officer and shareholder, including EL Mechanical. Thus, plaintiff lacked standing to claim a personal injury because of alleged damage to EL Mechanical.

Plaintiff also submitted an affidavit in support of his opposition to PNC Bank's motion for summary disposition. Plaintiff, as affiant, stated that he had a personal relationship with the buyers, purchasing officers, and engineers at Chrysler from 1989 through July 3, 2014, and was able to submit bids for work as a minority vendor using a Vendor ID that was assigned to him. However, after the receiver refused to allow the work to be performed at the Chrysler plant during the July 4, 2014 holiday weekend, he was "locked out" of the Chrysler infranet and was unable to obtain information about prospective work or submit bids for work. Further, as a result of the "lock out," he was unable to obtain work from other automotive manufacturers. Plaintiff stated that he had been a "diversity supplier" for over 25 years and had always had opportunities to perform plumbing and mechanical work for automotive manufacturers until he was "locked out." Plaintiff stated that he was not alleging that the receiver's conduct was improper; rather, he was alleging that Goyette and PNC Bank provided false information to the receiver which was relied upon and resulted in the decision to refuse to allow the work to be performed at Chrysler during the July 4, 2014 holiday.

On December 8, 2015, the trial court entered an opinion and order granting PNC Bank's motion for summary disposition and dismissing this lawsuit. The court noted that the case arose out of a joint venture between EL Mechanical, Goyette Mechanical, and/or Goyette-West to obtain and perform mechanical work. The joint venture led to an agreement between Chrysler Group and EL Mechanical to perform work. Subsequently, the court noted, PNC Bank executed multi-million-dollar loans to the benefit of the joint venture and, eventually, they went into default which led to a federal lawsuit and the appointment of a receiver. Plaintiff's claims in this action were rooted in allegations that Goyette interfered with EL Mechanical's agreement with Chrysler and orchestrated a breach of that contract by improperly influencing the receiver to remove EL Mechanical off of a profitable job. The trial court concluded, however, that plaintiff did not have standing to bring this action because he failed to show that any duty was owed directly to him. All alleged damages arose from injuries to EL Mechanical only and, thus, any lawsuit for such damages must have been brought in its name, not plaintiff's name as its stockholder and officer. Accordingly, plaintiff's complaint was dismissed in its entirety. This appeal followed.

Plaintiff argues that he had standing to bring this lawsuit; thus, the trial court's order granting summary disposition and dismissing this case must be reversed. We agree.

We review de novo a trial court's decision to grant a motion for summary disposition. *Lakeview Commons v Empower Yourself, LLC*, 290 Mich App 503, 506; 802 NW2d 712 (2010). Although the trial court did not indicate under which subrule it was granting PNC Bank's motion for summary disposition, because the parties submitted numerous documents in support of their briefs, which the trial court presumably considered, we review this matter as granted under MCR 2.116(C)(10). See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). A motion brought under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and should be granted if, after consideration of the evidence submitted by the parties in the light most favorable to the nonmoving party, no genuine issue regarding any material fact exists. *Lakeview Commons*, 290 Mich App at 506. We also review de novo as an issue of law whether a party has standing to bring an action. *Dep't of Consumer & Indus Servs v Shah*, 236 Mich App 381, 384; 600 NW2d 406 (1999).

In *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010), our Supreme Court explained the concept of "standing" as follows:

> The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy. Thus, the standing inquiry focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable. [*Id*. at 355 (internal quotation marks and citations omitted).]

The Court further held that, as a limited, prudential doctrine, "a litigant has standing whenever there is a legal cause of action." *Id*. at 372.

In Michigan, however, a corporation is treated as entirely separate from its shareholders or officers for purposes of the standing doctrine. *Belle Isle Grill Corp*, 256 Mich App at 473-474. Therefore, generally, a lawsuit to enforce corporate rights or to redress injury to a corporation, whether arising out of contract or tort, must be brought in the name of that corporation. *Id*. at 474. But where an individual can show that the wrong done violates a duty owed directly to him that is independent of the corporation, the general rule is inapplicable. *Mich Nat'l Bank v Mudgett*, 178 Mich App 677, 679-680; 444 NW2d 534 (1989). In other words, "where the alleged injury to the individual results only from the injury to the corporation, the injury is merely derivative and the individual does not have a right of action against the third party." *Id*. at 680.

In this case, plaintiff alleged claims of (1) tortious interference with a business relationship or expectancy against Goyette; (2) aiding and abetting against PNC Bank; and (3) conspiracy against Goyette and PNC Bank. These claims all arose from the receiver's cancellation of the July 4, 2014 Chrysler project involving EL Mechanical. According to plaintiff, Goyette told PNC Bank to tell the receiver to cancel the project in an effort to cause the ruination of plaintiff's reputation in the automotive manufacturing industry. Plaintiff notes that he is the holder of a Vendor ID, which is necessary to secure work in that industry, and claims that the Vendor ID is unique only to the individual holder, not the holder's various business entities. And because plaintiff was the holder of this Vendor ID he had, in fact, bid on and secured jobs with Chrysler and others for several years as a certified minority vendor in the automotive industry. That is, plaintiff personally had a longstanding and well-established business relationship with Chrysler and other automotive manufacturers before he entered into

-4-

the "Arrangement" with Goyette, which Goyette knew. Accordingly, plaintiff claimed, because Goyette and PNC Bank caused the receiver to cancel the July 4, 2014 project, and his personal Vendor ID was identified or associated with that project, Chrysler placed plaintiff—through his Vendor ID—on a "suspension list" which prevented plaintiff from seeking any work from Chrysler, as well as others in that industry who had access to that "suspension list." That is, according to plaintiff, regardless of any business entity, he *personally* has been precluded from working in the automotive industry because defendant Goyette, with the assistance of PNC Bank, succeeded in ruining both his reputation in that industry and his ability to secure work as a certified minority vendor in the automotive industry though his personal Vendor ID.[1]

Plaintiff has not asserted, however, that EL Mechanical suffered damages as a consequence of the alleged actions of defendants Goyette and PNC Bank with regard to the cancellation of the Chrysler project. That is, plaintiff has not brought this lawsuit to enforce the corporate rights of EL Mechanical or to redress any injury to that corporation arising from the cancellation of the July 4, 2014 project. See *Belle Isle Grill Corp*, 256 Mich App at 474. And the fact that the contract purportedly breached, when the receiver cancelled that project, was between Chrysler and EL Mechanical is not dispositive here. Plaintiff did not bring a breach of contract claim seeking damages on behalf of El Mechanical. And plaintiff's alleged damages did not result or derive from any injury to EL Mechanical. See *Mudgett*, 178 Mich at 680. Rather, plaintiff alleged damages resulting from a violation of a right that he individually possessed—the right to be free from the intentional interference with his business relationships or expectancies with manufacturers in the automotive industry, including Chrysler. Consequently, we disagree with the trial court's conclusion that plaintiff lacked standing because all of his alleged damages arose from injuries to EL Mechanical, and thus, any lawsuit in that regard must have been brought in the name of EL Mechanical.

Accordingly, we reverse the trial court's order granting defendant PNC Bank's motion for summary disposition and dismissing this action on the ground that plaintiff lacked standing to bring this lawsuit. We express no opinion, however, on the merits of plaintiff's claims.

Reversed and remanded for proceedings consistent with this opinion. Plaintiff is entitled to costs as the prevailing party. See MCR 7.219(A). We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

---

[1] A somewhat analogous situation may be when an individual's social security number is associated with a damaged credit profile or low credit score.