*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FARM BUREAU GENERAL INSURANCE
COMPANY,

UNPUBLISHED
November 16, 2023

Plaintiff-Appellee,

v

No. 362824
Oakland Circuit Court
LC No. 2020-184709-NZ

MAPLE MANOR NEURO CENTER, INC.,

Defendant-Appellant.

Before: RIORDAN, P.J., and CAVANAGH and GARRETT, JJ.

PER CURIAM.

In this no-fault case, defendant appeals as of right the order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) to plaintiff, in an action to recover fees paid for medical care provided to plaintiff's insured. On appeal, defendant contends the trial court erred in granting summary disposition on an unpled theory of unjust enrichment, and that a genuine issue of fact remains regarding whether defendant committed fraud. We reverse and remand for proceedings consistent with this opinion.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises out of injuries sustained by Veronica Fuentez-Noguez in a motor vehicle accident. At the time of the accident, Fuentez-Noguez (the insured) was insured under a policy of automobile insurance with plaintiff. The insured was admitted to a licensed 72-bed nursing home known as Maple Manor Rehab Center of Novi (Maple Manor Rehab) in February of 2017, where she stayed until December of 2017.

Claim forms for the insured's care submitted to plaintiff gave defendant's name as both the "billing provider" and in a field for "signature of physician or supplier including degrees or credentials." In the field for "service facility location information," the forms include the name of "Maple Manor Novi." Maple Manor Rehab and defendant are owned by Dr. Jose Evangelista and Dr. Stella Evangelista. Plaintiff paid $367,619.04 to defendant for the insured's care.

In 2019, the Michigan Department of Licensing and Regulatory Affairs (LARA) completed a licensure survey of Maple Manor Rehab facility. LARA found Maple Manor Rehab to be "in substantial compliance," but reported the following noncompliance:

> The facility was providing formal nursing care services, including mechanical ventilation and tracheostomy care, to seven residents in their "Neuro" wing without first obtaining a license for the beds in that unit.

In 2020, Maple Manor Rehab applied to "replace and relocate 9 existing licensed nursing home beds within the same building." Identified to receive one of the transferred licenses was bed 122-1, the bed to which plaintiff was admitted.

Plaintiff filed this complaint on November 17, 2020, alleging that defendant provided the insured's care and billed plaintiff for services "as an adult foster care center or nursing home," while lacking licensure to operate in that capacity. Plaintiff asserted a claim under MCL 500.3157[1] of the no-fault act, MCL 500.3101 *et seq*. Before June 10, 2019, MCL 500.3157 of the no-fault act stated, in pertinent part: "A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance . . . may charge a reasonable amount for the products, services and accommodations rendered." MCL 500.3157. Accordingly, plaintiff alleged that because defendant was not licensed as a nursing home or adult care center, the services it provided were not lawfully rendered, and not compensable, entitling plaintiff to reimbursement of payments made to defendant. Plaintiff asserted an additional claim for "fraud/innocent misrepresentation/silent fraud." Defendant's answer denied providing the insured's care, and insisted it operated as "merely a billing agent that submitted medical bills . . . on behalf of a licensed medical service provider Maple Manor Rehab Center of Novi Inc."

Plaintiff moved for summary disposition under MCR 2.116(C)(10), arguing that because defendant was not licensed to perform adult foster care and nursing care, defendant's billing for the insured's care was in contravention of MCL 500.3157. Plaintiff also argued that because the insured was not treated in a licensed nursing home bed, her treatment was unlawfully rendered and plaintiff was not obligated to pay, under MCL 500.3157. Finally, plaintiff argued that defendant's presentation of medical bills for the insured's care defrauded plaintiff.

Having dispensed with oral argument, the trial court issued an opinion and order granting plaintiff summary disposition. First, the trial court found that defendant wrongfully billed plaintiff for adult foster care and nursing home care. The trial court rejected defendant's argument that it was a billing agent for Maple Manor Rehab in 2017. The trial court found that, because defendant did not lawfully render treatment, it did not have a right to charge for and receive payment for the services. The trial court continued:

---

[1] MCL 500.3157 was amended, effective June 11, 2019. 2019 PA 21. We consistently cite MCL 500.3157 as it read before the 2019 amendment, because the insured's treatment took place in 2017.

Farm Bureau is entitled to recoup the payments for the nursing home care under a theory of unjust enrichment. The elements of unjust enrichment are: "(l) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). When such elements exist, "the law operates to imply a contract in order to prevent unjust enrichment." *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993). Here, Neuro has received a benefit in the form of payment of $215,230 for nursing home care, and it would be inequitable for Neuro to retain that benefit. Therefore, Farm Bureau is entitled to recoup that amount from Neuro.

Second, the trial court found that the insured was not treated in a licensed nursing home bed, which defendant did not present any evidence to dispute. The trial court concluded:

> [E]ven if the Court finds there is a question of fact as to whether Neuro's lack of licensure as a nursing home rendered the treatment unlawful for purposes of MCL 500.3157, the fact that Claimant was, in fact, treated in an unlicensed nursing home bed would still render the treatment unlawfully rendered.

The trial court further concluded that defendant's presentation of medical bills to plaintiff constituted fraud, justifying summary disposition for plaintiff.

> Even viewing the evidence in the light most favorable to Neuro, there is no genuine issue of fact for trial and Farm Bureau is entitled to judgment as a matter of law. Neuro's failure to disclose that it was not licensed to provide nursing care and its failure to disclose that the bed in which Claimant was treated was not licensed to a nursing home bed were material omissions, and Farm Bureau reasonably relied on the omissions when it issued payment to Neuro. Farm Bureau was not obligated to investigate Neuro's licensure.

This appeal followed.

## II. STANDARD OF REVIEW

We review summary disposition rulings de novo. *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004). This Court reviews a motion for summary disposition on appeal in the same way the trial court was obligated to review it. See *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012).

Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When moving under MCR 2.116(C)(10), the moving party has the initial burden to identify "the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4); see also *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8-9; 890 NW2d 344 (2016). If the moving party properly asserts and supports their motion for summary disposition, the "burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists," and they

cannot do this by relying on mere allegations or denials in their pleadings. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003); see also *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In considering a motion for summary disposition, the court need only consider the evidence identified by the parties. See *Barnard Mfg Co v Gates Performance Engineering, Inc*, 285 Mich App 362, 377; 775 NW2d 618 (2009). "A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party, MCR 2.116(G)(5); *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012), and must draw all reasonable inferences in favor of the nonmoving party, *Dextrom v Wexford Co*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010). Further, the trial court may not make findings of fact or weigh credibility in deciding a motion for summary disposition. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Appellate review of a summary disposition ruling is limited to the evidence presented to the trial court at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009).

The question of the availability of insurance under a statute is a question of statutory interpretation. *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 296; 876 NW2d 853 (2015). We also review de novo whether the trial court properly interpreted relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). Finally: "Whether a claim for unjust enrichment can be maintained is a question of law that we review de novo. Trial court rulings regarding equitable matters are also reviewed de novo." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22; 831 NW2d 897 (2012) (citation omitted).

III. ANALYSIS

The trial court's unjust enrichment analysis was superfluous; instead, the trial court based its grant of summary disposition on a finding defendant had not lawfully rendered care under MCL 500.3157. However, this ruling was in error, because there remain questions of material fact whether: (1) defendant acted as a permissible billing agent only, and not a care provider, and (2) the insured's care was provided in an unlicensed nursing home bed.

To support a claim of unjust enrichment, one must establish: "(l) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). When the elements of unjust enrichment exist, "the law operates to imply a contract in order to prevent unjust enrichment," *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993), and relatedly a claim of unjust enrichment can be successfully defeated when the parties had a contract on point, *Belle Isle Grill*, 256 Mich App at 478.

-4-

Pointing out the insured's assignment of benefits to defendant, defendant attempts to establish a contractual obligation of plaintiff to pay defendant for the care. However, "assignments typically cover only [those] rights possessed by the assignors at the time of the assignment." *Gallardo By & Through Vassallo v Marstiller*, 596 US 420, 434; 142 S Ct 1751; 213 L Ed 2d 1 (2022) (quotation marks and citations omitted). Plaintiff's main contention is that it was never under any obligation to pay for the care provided at Maple Manor Rehab, because it was not lawfully rendered. Because of this, if plaintiff suffered an inequity from defendant's retention of the payments, the doctrine of unjust enrichment would apply. Any alleged inequity to plaintiff presents a question of fact because, defendant contends, regardless of what entity received the payment, the insured received the appropriate care required to be provided under the policy, and no allegations have been made regarding the fairness of the fee paid. Plaintiff counters that the alleged MCL 500.5137 violation comprises the inequity.

However, the analysis of the theory of unjust enrichment is unnecessary. The trial court granted summary disposition on two separate lines of reasoning: (1) because defendant and the bed in which the insured was treated lacked licensure, care was not lawfully rendered under MCL 500.3157; and (2) defendant committed fraud by omitting information about its lack of licensure in its billing submittals. In discussing the first ground for summary disposition, the trial court mentioned unjust enrichment, stating: "Farm Bureau is entitled to recoup the payments for the nursing home care under a theory of unjust enrichment." However, this statement was superfluous, because it was unnecessary to turn to contract law when it had already determined defendant was not entitled to the retain payment under MCL 500.3157. The mention of "unjust enrichment," while confusing the reasoning in the trial court's opinion, does not supplant the existence of the two independent grounds relied on by the trial court in its ruling: MCL 500.3157 and fraud. Relatedly, defendant contends that the trial court's sua sponte ruling of unjust enrichment violated its right to due process because there was no opportunity to respond to the unpleaded contention. Due process requires "notice and a meaningful opportunity to be heard," *Al-Maliki v LaGrant*, 286 Mich App 483, 488-489; 781 NW2d 853 (2009), which is implicated when sua sponte grounds are the sole basis of a court's ruling, *id*.; *Lamkin v Hamburg Twp Bd of Trustees*, 318 Mich App 546, 551; 899 NW2d 408 (2017). However, because the unjust enrichment reasoning was not a necessary link in the chain of logic used by the trial court to grant summary disposition on the grounds pleaded, any error is harmless. See *Boulton v Fenton Twp*, 272 Mich App 456, 464; 726 NW2d 733 (2006); MCR 2.613(A).[2]

Turning to the statutory ground for summary disposition, before June 10, 2019, MCL 500.3157 of the no-fault act stated:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the

---

[2] MCR 2.613(A) states: "[A]n error in a ruling or order . . . is not ground[s] for . . . disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice."

products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance. [MCL 500.3157.]

When interpreting the no-fault act, this Court has found: "[T]he Legislature intended that only treatment lawfully rendered, including being in compliance with licensing requirements, is subject to payment as a no-fault benefit." *Cherry v State Farm Mut Auto Ins Co*, 195 Mich App 316, 320; 489 NW2d 788 (1992).

To support its argument that defendant is not entitled to payment for the insured's care under MCL 500.3157, plaintiff cites *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51; 744 NW2d 174 (2007). In *Healing Place,* the medical providers possessed licenses to operate as substance abuse programs, but sought payment for an insured's accident-related psychiatric and adult foster care services. *Id*. at 57-58. This Court concluded, "as a matter of law, that the services provided by plaintiffs were not 'lawfully render[ed].' " *Id*. at 58. In arriving at this conclusion, this Court reasoned:

> We find no basis . . . to conclude that the phrase "lawfully rendering treatment" permits an institution providing treatment to avoid licensure on the basis that a natural person providing the treatment at the institution is licensed. . . . In our judgment, the plain language of MCL 500.3157 requires that before compensation for providing reasonable and necessary services can be obtained, the provider of treatment, whether a natural person or an institution, must be licensed in order to be "lawfully rendering treatment." If both the individual and the institution were each required to be licensed and either was not, the "lawfully render[ed]" requirement would be unsatisfied. [*Id.* at 59.]

The key difference, however, between the facts of *Healing Place* and the instant case is that defendant points to Maple Manor Rehab as the provider, arguing that defendant's lack of licensure is irrelevant because it only acted as a billing agent. As such, the preliminary question of law is whether it is permissible for an entity, other than the provider, to bill for no-fault benefits on the provider's behalf. If this is permissible, the material questions of fact at issue are whether defendant actually rendered the services, and whether the services were unlawfully rendered because of the licensing status of the insured's bed.

Turning first to the question of whether use of a billing agent is permissible under the no-fault act, this Court's recent unpublished opinion,[3] *Maple Manor Rehab Ctr of Novi, Inc v Travelers Cas & Surety Co*, unpublished per curiam opinion of the Court of Appeals, issued July 21, 2022 (Docket No. 355775) ("*Travelers*"), addresses the same issue, and involved the same relationship between Maple Manor Rehab and defendant. In that case, this Court held that

---

[3] Though "[a]n unpublished opinion is not precedentially binding," MCR 7.215(C)(1), "a court may nonetheless consider such opinions for their instructive or persuasive value," *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

defendant could submit billings for medical care provided by Maple Manor Rehab without violating the "lawfully rendered" standard of MCL 500.3157:

> There is no dispute that Maple Manor Neuro was incorporated for the sole purpose of providing accounting and billing services for patients treated at Maple Manor Rehab who were eligible for no-fault benefits, and that Maple Manor Neuro itself did not provide any healthcare services to [the claimant].[4] There is also no dispute that [the claimant] was treated by properly licensed healthcare professionals at Maple Manor Rehab, and that Maple Manor Rehab was properly licensed to provide the type of care and treatment [the claimant] received. Because Maple Manor Rehab "lawfully render[ed] treatment" to [the claimant], Maple Manor Rehab was entitled to "charge a reasonable amount for the products, services and accommodations rendered." MCL 500.3157(1). Nothing in the statute prohibits a healthcare provider from billing for those charges through a separate entity or prohibits either of those entities from being an assignee of [the claimant's] right to no-fault payments in satisfaction of those charges. Travelers has not argued that plaintiffs' internal corporate structure violates the no-fault act or that Maple Manor Neuro was billing for something other than the treatment Maple Manor Rehab lawfully rendered to [the claimant]. [*Travelers*, unpub op at 10.]

A subsequent unpublished opinion addressing the relationship between Maple Manor Rehab and defendant and whether bills submitted through this relationship were compensable under MCL 500.3157, ruled similarly. *Maple Manor Rehab Ctr of Novi, Inc v Allstate Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued March 16, 2023 (Docket No. 358272), p 4. This Court reversed summary disposition for the insurer because there remained a genuine issue of material fact whether defendant was not the provider, and instead, merely an impliedly permissible billing agent for Maple Manor Rehab. *Id*.

To support its argument that invoicing an insurer through the use of a billing agent releases an insurer from its obligation to pay, plaintiff cites the canon of construction known as "*expressio unius est exclusio alterius*"—the expression of one thing is the exclusion of others. This canon is understood to mean that the express mention of one thing in a statute implies the exclusion of other similar things. See *Johnson v Recca*, 492 Mich 169, 176 n 4; 821 NW2d 520 (2012). Recall, MCL 500.3157 states: "A physician, hospital, [or] clinic . . . lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance . . . may charge a reasonable amount for the products, services and accommodations rendered." Plaintiff argues *expressio unius est exclusio alterius* requires this provision be read as prohibiting anyone other than the individual or entity that "lawfully render[ed]" the treatment from "charg[ing] a reasonable amount for the . . . services . . . rendered." MCL 500.3157. However, this canon is merely a tool to determine legislative intent and does not automatically lead to results. See *Luttrell v Dep't of Corrections*, 421 Mich 93, 107; 365 NW2d 74 (1984).

---

[4] Note, the insurer in *Travelers* did not present evidence of defendant's incorporation history, or argue defendant provided the care that was billed. The insurer's arguments were limited to challenging Maple Manor Rehab's use of defendant as a biller.

> This maxim properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment. [*Ford v United States*, 273 US 593, 611; 47 S Ct 531; 71 L Ed 793 (1927).]

This is not the case when one considers the MCL 500.3157 provision, because the provider directly charging the insurer for the services lacks this "strong contrast" with the provider charging the insurer through use of a billing agent. Though the cited unpublished cases are not binding, MCR 7.215(C)(1), and though separate legal entities are not interchangeable, see *Dutton Partners, LLC v CMS Energy Corp*, 290 Mich App 635, 643; 802 NW2d 717 (2010), there is nothing in the no-fault act that indicates the Legislature intended to prohibit the use of billing agents.

Before turning to the question regarding the existence of a genuine issue of fact whether the services billed for were lawfully rendered, defendant's argument that plaintiff lacks standing to challenge its licensure must be addressed. Our appellate courts have found insurers lack standing to challenge providers' corporate status, see *Miller v Allstate Ins Co*, 481 Mich 601, 614; 751 NW2d 463 (2008) (holding insurers may not challenge "the corporate status of a corporation formed under the [Business Corporation Act]"); *Sterling Hts Pain Mgmt, PLC v Farm Bureau Gen Ins Co of Mich*, 335 Mich App 245, 247; 966 NW2d 456 (2020) (finding the insurer did not have standing to challenge the provider's compliance with the Michigan Limited-Liability Company Act); *Grady v Wambach*, 339 Mich App 325, 327; 984 NW2d 463 (2021) (stating: "[W]e hold that defendant insurer lacks statutory standing to challenge the alleged improper formation of a Michigan professional limited liability company"), or to invoke a criminal solicitation statute against a provider, *Richardson v Allstate Ins Co*, 328 Mich App 468, 473; 938 NW2d 749 (2019). However, this Court has also found insurers have "standing to defend its refusal to pay [personal injury protection] benefits when neither the provider nor the medical institution [are] properly licensed to perform the services rendered." *Grady*, 339 Mich App at 334.

Finding plaintiff has standing to challenge the provider's licensure under MCL 500.3157, it is important to note at the outset that a claimant of medical care benefits bears the "burden to prove that the services . . . were compensable." *Healing Place*, 277 Mich App at 57; *Cherry*, 195 Mich App at 318-319 ("A claimant who seeks to hold an insurer liable for no-fault medical benefits under MCL 500.3107 . . . has the burden of proving that the expense was reasonably necessary, the charge was reasonable, and the expense was incurred."). Plaintiff argues that defendant rendered care to the insured, pointing to defendant's incorporation history for support. Though it is true, at the time of the insured's care, defendant gave its corporate purpose as "Physical Therapy, Occupational Therapy, Speech Therapy," and described itself as a "medical office," this is not direct evidence to support the argument that defendant provided medical care to anyone, let alone the insured. To establish a question of fact, defendant presented the affidavit of Maple Manor Rehab's Director of Human Resources, who unequivocally stated that defendant "cannot and does not provide any direct care or direct treatment to patients." Though Dr. Stella Evangelista's deposition, during which she affirmed "Maple Manor Neuro" provided various medical services for patients, potentially contradicts this assertion, there remains a question of fact whether defendant had any part in rendering services.

-8-

Not only does Michigan licensing law require adult foster care facilities and nursing homes be licensed, MCL 333.21718(2) requires, in pertinent part: "As a condition of skilled nursing facility certification, a nursing home shall obtain concurrent certification under title 19 of the social security act . . . for each bed that is certified to provide skilled care under title 18 of the social security act . . . ." Accordingly, individual bed licensure is a potential issue for consideration when assessing if the insured's care was "lawfully render[ed]" under MCL 500.3157. Plaintiff has presented evidence the insured was admitted to bed 122-1, and was being treated in the same bed in the last month of her 10-month stay at the facility. Chronologically, the next evidence plaintiff presents about Maple Manor Rehab's beds are the results of LARA's June 2019 compliance survey at the facility, which include: "The facility was providing formal nursing care services . . . to seven residents in their 'Neuro' wing without first obtaining a license for the beds in that unit." Nine months after this survey, Maple Manor Rehab applied to transfer licensure status to several beds, including bed 122-1. However, all this proves is plaintiff was cared for in bed 122-1 for at least some part of her 2017 stay at the facility, and bed 122-1 was unlicensed at some point in mid-2019, to early 2020. This does not directly establish concurrency of a lack of nursing home bed licensure and the insured's care in the identified bed. Defendant counters with the statements of Maple Manor Rehab's Director of Admissions that the facility never exceeded its licensed 72-patient limit. Neither party presents direct evidence regarding licensing of the insured's bed during her stay at the facility, and a question of fact regarding whether care was lawfully rendered remains.

Common-law fraud requires proof:

(1) the [party] made a material representation; (2) the representation was false; (3) when the [party] made the representation, the [party] knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the [party] made the representation with the intention that the [opposing party] would act upon it; (5) the [opposing party] acted in reliance upon it; and (6) the [opposing party] suffered damage. [*Maurer v Fremont Ins Co*, 325 Mich App 685, 695; 926 NW2d 848 (2018) (quotation marks and citation omitted).]

Because there remains a question of material fact whether care was lawfully rendered under MCL 500.3157, a question necessarily remains whether defendant made a material misrepresentation, and summary disposition on the basis of fraud is in error as well.

## IV. CONCLUSION

The trial court's unjust enrichment analysis was superfluous; instead, the trial court based its grant of summary disposition on a finding defendant had not lawfully rendered care under MCL 500.3157. However, this ruling was in error, because there remain questions of material fact whether (1) defendant acted as a permissible billing agent only, and not a care provider, and (2) the insured's care was provided in an unlicensed nursing home bed. The erroneous grant of summary disposition on the basis of MCL 500.3157 renders summary disposition on the issue of fraud error as well.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett